MICHAEL DONAHOE
Deputy Federal Defender
Federal Defenders of Montana
Helena Branch Office
50 West 14th Street, Suite 1
Helena, Montana 59601
Phone: (406) 449-8381
Fax: (406) 449-5651
Email: michael_donahoe@fd.org
Attorneys for Defendant

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> MICHAEL BLAKE DeFRANCE, <br><br> Defendant. | CR 21-29-M-DLC <br><br> **DEFENDANT DeFRANCE'S BRIEF IN SUPPORT OF OPPOSED MOTION TO DISMISS SECOND SUPERSEDING INDICTMENT BASED ON *BRADY* ERROR, PROCEDURAL DUE PROCESS, COLLATERAL ESTOPPEL, AND VINDICTIVE PROSECUTION UNDER RULE 12(b)(3)(A)(iv)** |

## **INTRODUCTION**

Mr. DeFrance has filed a motion to dismiss the second superseding indictment (ECF No. 69). This brief supports that motion and is filed to satisfy C.R. 47.2: "A motion must be accompanied by a brief in support filed separately and at the same time as the motion".

1

# ARGUMENTS

The written motion (ECF No. 69) states four (4) grounds and we address those here in the same order.

1. *Failure to consider or timely disclose highly relevant* Brady *information.*

On August 1, 2021, September 21, 2021, and again on November 18, 2021, the government was publicly admonished concerning its obligations to disclose evidence under *Brady v. Maryland*, 373 U.S. 83 (1963) as set forth in the Due Process Protection Act. *See* ECF Nos. 7, 48, and 60. Moreover, at the last arraignment on November 18th, concerning the second superseding indictment defense counsel stated:

> But more particularly, I would like to put the government on notice. I can make and will make a formal discovery request in writing, but from previous work, the addition of those two counts involves ATF Form 4473. Those forms provoke some kind of process with ATF. Once that transaction is being gone through in the pawnshop or the gun store –
>
> THE COURT: Um-hmm.
>
> MR. DONAHOE: -- or wherever, and they call it in, it's assigned a number and there's a followup, and sometimes an agent actually on the ground looks at all that data and makes some kind of determination whether the person is prohibited.
>
> I want all of those documents. And if they're gonna be hard to find or, you know, however that works –
>
> Transcript of Arraignment,<br>November 18, 2021, page 7, lns. 7-21.

The next day (November 19, 2021) the government furnished the ATF documentation, which is now ECF No. 63 filed under seal. Working backward in the docket, however, the Court can see that on September 1, 2021, the defense gave notice of intended defenses to the original one-count superseding indictment (ECF No. 27). As part of that notice, we also included the sealed exhibit showing that Mr. DeFrance had successfully engaged in five (5) firearms transactions at a local pawn shop. The very pawn shop that Mr. DeFrance designated in his notice of defenses. (*Compare* ECF No. 27 *with* ECF 28). Furthermore, the docket in this case reveals that in the meantime briefing progressed on Mr. DeFrance's first round of pretrial motions with the government, not only opposing all of Mr. DeFrance's requests for relief but aggressively opposing each defense which Mr. DeFrance intended to bring up at trial. (*Compare* Notice of Defenses, ECF No. 28, *with* the government's Motion in Limine to Exclude, ECF No. 37).

Inasmuch as ECF No. 63 is under seal we hesitate to quote from it, but the gist is that the documents and narrative which compose ECF No. 63 clearly express the idea that all the transactions documented by the ATF 4473 Forms we furnished the government were done legally. Yet aside from this overall exculpatory conclusion there are three finer points the Court should consider here. The first is that as it turns out not only does ECF No. 63 show that all five (5) ATF 4473 transactions concluded legally, there are damning admissions by the government indicating that government

NICS records have been purged, and further that the NICS process on Mr. DeFrance's 4473 transactions did not involve an accurate categorical analysis of the Montana PMFA statute Mr. DeFrance was convicted under, *vis-à-vis* the Federal definition of domestic crime of violence set forth in 18 USC §921(a)(33). In other words, not until *after* Mr. DeFrance had been charged under 18 USC §922(g)(9) in the original indictment did the United States even attempt to accurately determine whether Mr. DeFrance was a prohibited person. And worse, when the government finally did acquire the ATF 4473 Form documentation on September 16th it was not disclosed to the defense until November 19th.

On September 13, 2021, the Court held a hearing on Mr. DeFrance's then pending motions, one of which argued that a Montana PFMA is not a categorical match with the federal statute. On September 16, 2021, the government came into possession of ECF No. 63. Yet the United States did not disclose the material in ECF No. 63 until some two months later on November 19, 2021. The cogent take away here is that at this point in time there is no way to determine accurately whether the NICS system failed or succeeded relative to the 4473s that Mr. DeFrance processed and disclosed to the government voluntarily in order to defend himself. Consider it this way: it could be that the five (5) NICS checks to which Mr. DeFrance was exposed each and all cleared him to "proceed" with the transactions thereby reinforcing in Mr. DeFrance's mind that he was not a prohibited person. Granted,

maybe the outcome would be different were there just an isolated and single 4473 transaction. But that is not the situation. The situation is that there is currently no way to determine if Mr. DeFrance was "proceeded" or not by the five (5) NICS checks which were run on him at the pawn shop.

Thus, we contend given that 4473 documents have been "purged" it is simply unreasonable for the government to take the extreme position that Mr. DeFrance is a prohibited person worthy of prosecution on this record. Especially considering that the government did not disclose the 4473 data until November 19, 2021. Despite the fact that Mr. DeFrance had motions pending to which the material was *independently* relevant (ECF Nos. 15, 16 and 17); and government counsel had come into possession of the material as early as September 16, 2021. (*See* ECF No. 69, Exhibit B, pages 1-4). Although, the motions just referenced address a variety of topics too complex to reprise in detail here, suffice to say that the arguments contained in those papers put at issue both the constitutional integrity and the manner in which Mr. DeFrance's Montana PFMA predicate conviction allegedly resulted in the loss of his Second Amendment firearms rights. Consequently, since the documents in ECF No. 63 were obtained by the government on September 16th, they should have been disclosed immediately upon receipt for their relevance to the then pending motions. The tardy disclosure is worthy of sanction.

///

*2. Denial of procedural due process.*

The Due Process Clause of the Fifth Amendment to the United States Constitution contains a guarantee of fair procedure. *Zinermon v. Burch*, 494 U.S. 113, 125-126 (1990). Under procedural due process claims it is not the denial of the protected interest in life, liberty or property that is unconstitutional; "what is unconstitutional is the deprivation of such an interest *without due process of law*". *Id.* (emphasis original).

According to our investigation when an individual is "denied" eligibility to acquire a firearm he or she has a right to an administrative appeal. (*See* Exhibit A, attached to ECF 69). We contend that at a minimum the documentation in ECF No. 63 represents a *nunc pro tunc* denial by ATF of Mr. DeFrance's right to possess a firearm, which is a constitutional entitlement in its own right. *See e.g., District of Columbia v. Heller*, 554 U.S. 570 (2008). As such this qualifies Mr. DeFrance the right to pursue an administrative appeal. Yet the government simply leapfrogs over this procedural entitlement in favor of this criminal prosecution.

This is particularly disturbing when we consider the full impact of the information contained in ECF No. 63. A fair summary would be that on the one hand the government *concedes* that it is entirely possible that in each and every 4473 transaction that we disclosed in the Notice of Defenses, Mr. DeFrance survived the NICS check and was allowed to "proceed" with the transaction. However, says the

government, we cannot confirm or deny that this is correct because all of the surrounding documents associated with those transactions have been destroyed. Yet not to worry adds the government, we will simply make a fresh analysis of Mr. DeFrance's Montana PFMA predicate, rule him a prohibited person *currently* and to make sure we (the government) are in a strong position we will tag Mr. DeFrance as a "liar" by charging him with three new violations under 18 USC §922(a)(6).

> 3. *Mr. DeFrance is not a prohibited person and the analysis conducted by ATF Analysts Stephen Feuerstein and Dana Pickles concluding that Mr. DeFrance is a prohibited person is wrong.*

In the discovery that the government suppressed for at least two months, two (2) ATF Analysts seem to reach the counterintuitive opinion that no matter what ATF may have decided *before*, in the context of the previous NICS checks, Mr. DeFrance is nevertheless a prohibited person *now*. We begin with Analyst Dana Pickles' report which is attached to our motion as Exhibit B:

> I try to purchase a firearm and NICS runs my background check and they find that I have a misd battery arrest from 1996 with no final disposition. As battery is all meets in all states for the use or threatened use of physical force in regards to misd crimes of domestic violence (MCDVs… federally prohibiting under 18USC922g9) they have to research to see if A) I was convicted (and if so was if for the battery charge or was it reduced to assault, disorderly conduct, etc) and B) what was the relationship of the victim to me. Only certain relationships meet federally (such as spouse/ ex spouse, cohabitating or formerly cohabitating boyfriend/girlfriend, share a child in common, etc).

ECF No. 69, Exhibit B, page 1.

There is nothing in the federal definition of qualifying relationships [18 USC §921(a)(33)] stating that a "cohabitating or formerly cohabitating boyfriend/girlfriend" relationship satisfies federal law. Furthermore, the Montana PFMA statute under which Mr. DeFrance was convicted [45-5-206, MCA (2011)] contains extra broad language on the relationship element that goes way beyond the federal relationship definition:

> (a) "Family member" means mothers, fathers, children, brothers, sisters, and other past or present family members of a household. These relationships include relationships created by adoption and remarriage, including stepchildren, stepparents, in-laws, and adoptive children and parents. These relationships continue regardless of the ages of the parties and whether the parties reside in the same household.
>
> (b) "Partners" means spouses, former spouses, persons who have a child in common, and persons who have been or are currently in a dating or ongoing intimate relationship.
>
> Mont. Code Ann. §45-5-206(2)(a) and (b).

Not to belabor the point but if ATF Analyst Pickles means to say that cohabitating boyfriend/girlfriend relationships count under federal law that is just plain wrong.

Next is ATF Analyst Stephen Feuerstein's conclusion. He states without analysis or reference to any Montana law the opaque conclusion that although there was no court of record for Mr. DeFrance's Montana PFMA, the government incorrectly authorized a prohibited person to acquire firearms. (ECF No. 63, page

1). Thus, without any considered analysis, ATF Analyst Feuerstein reaches a real time conclusion that Mr. DeFrance is a prohibited person; but in the ensuing two pages of his opinion Analyst Feuerstein says that it is possible that Mr. DeFrance was "proceeded" in all five of his ATF 4473 transactions. Yet there is no way to tell because the records have been destroyed. (ECF No. 63, pp. 2-3).

The government ought not to be allowed to take such highly inconsistent positions. *See e.g.*, *Russell v. Rolfs,* 893 F.2d 1033, 1037 (9th Cir. 1990) (Policies underlying doctrine of inconsistent positions is to protect against a litigant playing fast and loose with the courts) (cleaned up). *Also see and compare Bouie v. City of Columbia*, 378 U.S. 347 (1964) (holding that unforeseeable and retroactive application of a new construction of a statute is impermissible because it does not provide notice of the law). Stated in simpler terms: the government cannot reach a defense favorable conclusion one day, only to abandon it the next. Especially where, as here, the government admits that there is no way to confirm one way or the other whether Mr. DeFrance was "proceeded" in his 4473 transactions since all the records have been destroyed. *Cf. Illinois v. Fisher*, 124 S. Ct. 1200, 1203 (2004), Justice Stevens *concurring in the judgment* "there may well be cases in which the defendant is unable to prove the State acted in bad faith but in which the loss or destruction of evidence is nonetheless so crucial to the defense as to make a criminal trial unfair", *other cite omitted*.

In any case the records destroyed here were not simply "potentially useful evidence" *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988). Those destroyed records are indeed "material exculpatory evidence" and for this reason there is no requirement that the defense make a showing of bad faith.

   *4. The second superseding indictment satisfies the Supreme Court's vindictive prosecution analysis and is therefore subject to dismissal.*

Bearing in mind everything stated and argued so far, we now turn to the government's decision to file the second superseding indictment against Mr. DeFrance, which was returned on October 21, 21 (ECF No. 54). In this charging document the government upped the ante by adding three false statement counts under 18 USC §922(a)(6) in response to Mr. DeFrance's notice of defenses and his disclosure of the five (5) ATF 4473 Forms from his previous pawn shop firearms transactions. (ECF Nos. 27 and 28).

This new configuration of charges in the second superseding indictment did not arise in the context of plea negotiations; and it cannot be disputed that the additional charges filed were not justified by evidence in the government's possession at the time the original indictment was obtained. In other words, the government had no knowledge that Mr. DeFrance had successfully transacted in firearms at the pawn shop, until the defense provided copies of the ATF 4473 Forms attendant to those transactions. Furthermore, the second superseding indictment was

not filed until after Mr. DeFrance noticed up his defenses, which the government vigorously opposed in limine, a motion that the Court had/has before it awaiting decision. (ECF Nos. 36 and 37).

There are two routes to a finding of vindictiveness. First, vindictiveness can be presumed if the defense can draw a straight line from the exercise of a procedural right to the vindictive charging of additional charges by the government. Importantly, the presumption of vindictiveness is not simply concerned with bad motive, it is likewise intended to protect against the reasonable *apprehension* of vindictiveness that might persuade a defendant to forgo the exercise of a significant procedural right. *Cf. North Carolina v. Pearce*, 395 U.S. 711, 725 (1969). This is the situation here.

Mr. DeFrance, as would any defendant in his situation, harbors a reasonable apprehension that the government elected to bring the additional charges against him as a direct result of his notice of defenses (ECF No. 27), which required disclosure of his previous pawn shop transactions and the surrounding ATF 4473 Forms (ECF No. 28). What better way to blunt and even totally neutralize Mr. DeFrance's defenses than to decisively take the position that Mr. DeFrance lied on the forms.

The problem with this tactic, however, is that it jump-starts the presumption of vindictiveness. First, and again, the government did not know about the ATF 4473 Forms until we furnished them and put them in the record as ECF No. 28.

11

Therefore, the government cannot contend that the new false statement charges were always a possibility. Furthermore, what makes the decision to file the additional charges particularly repugnant is that in the paperwork surrounding the 4473s the ATF Analysts concede that due to documents being purged there is no way to determine now whether Mr. DeFrance's previous pawn shop transactions were "proceeded" or not.

Careful examination of the analysis conducted by ATF Analysts Pickles and Feuerstein make it evident that two (2) of the five (5) ATF 4473 Forms that the defense disclosed were outright "proceeds". Furthermore, the remaining three (3) could likewise have resulted in those transactions being "proceeded", a point we will never be able to confirm or dispute, since all the surrounding documents have been purged. Nevertheless, and despite this ambiguous administrative record, the government elects to contend that Mr. DeFrance lied on three (3) the ATF 4473 Forms. How convenient: cast Mr. DeFrance as a prevaricator so as to deflect attention away from what under any fair assessment is a strong defense to the original charge.

If Mr. DeFrance processed all five (5) ATF 4473 Forms and was "proceeded" each time, the reliance factor alone would be powerful evidence that could result in a not guilty verdict on the original charge of unlawful firearm possession. Yet instead of allowing the jury to be exposed to the possibility that the five (5) previous

NICS checks raise sufficient reasonable doubt, the government instead decided to take the low road by claiming that Mr. DeFrance is just a liar.

*United States v. Kent*, 649 F.3d 906 (9th Cir. 2011) holds that a defendant can establish vindictive prosecution by producing direct evidence of a prosecutor's punitive motivation or by showing that circumstances establish a reasonable likelihood of vindictiveness. 649 F.3d at 912-913. Here we have both so the distinction between those two legal tests hardly matters. Deciding to bring more charges on this record can be ascribed to nothing other than the desire to blunt, weaken and distort Mr. DeFrance's notice of defenses. Given the uncertainty surrounding whether Mr. DeFrance was "proceeded" in all five (5) of the previous 4473 transactions, the single most important reason for the government to file additional false statement charges was to punish Mr. DeFrance for exercising the procedural right to defend himself. Rather than await the Court's ruling on its in limine motion to prohibit Mr. DeFrance's noticed defenses the government elected to strike preemptively in order to deny Mr. DeFrance a fair trial. Given that the government concedes that relevant documents from the 4473 process have been purged and that NICS did not complete its investigation properly the second superseding indictment rises to the level of vindictiveness and ought to be dismissed.

If it has not been made clear by now, we contend that there is a direct line between our notice of defenses (ECF Nos. 27 and 28) and the government's

apparently deliberate decision, not only to double down on the original indictment, but to also add new false statement charges on top of that. And this is especially true when we step back and include the pretrial arguments that have already been made concerning the applicability of the categorical approach as well as the due process vagueness issues currently before the Court.

The initial and substantial legal uncertainty whether Mr. DeFrance should be deemed a prohibited person in the first place, only adds to the vindictive nature of the second superseding indictment would be another way to say this. Factually, there is nothing the government has put before the Court to show that any government actor (including the two ATF Analysts who suggest Mr. DeFrance is a prohibited person almost eight (8) years after his Montana PFMA conviction was entered) conducted a proper and thorough categorical analysis of Mr. DeFrance's Montana PFMA conviction. Particularly important here is the fact that two experienced federal Judges in this District (the Honorable Chief Judge Morris and the Honorable Judge Watters) have reached opposite conclusions on the categorical analysis of key aspects of relevant Montana assault statutes which make it clear, at a minimum, that there is a genuine disagreement whether Montana PFMA conviction qualifies as a predicate under 18 USC §922(g)(9).

This being so, it is more than puzzling that after the government's tardy disclosure of the ATF paperwork surrounding Mr. DeFrance's pawn shop

transactions, it (the government) would nevertheless persist in claiming that it should have been clear to Mr. DeFrance that Montana PFMA convictions categorically deny Second Amendment firearms rights. Especially the facts that the ATF paperwork acknowledges on its face that Mr. DeFrance could have been "proceeded" in five (5) consecutive firearms transactions and/or that the NICS system failed. In these circumstances we should ask ourselves why the government has not elected to embrace the rule of lenity, reasoning that under the facts of this case government system failures simply resulted in an improper NICS investigation and an overall "not . . . good situation". (ECF No. 63, p.1). *Cf. United States v. Lanier*, 520 U.S. 259, 266 (describing three manifestations of the fair warning requirement and the rule of lenity).

One possible explanation for the government's insistence on both not only maintaining the original indictment but adding to it is that Mr. DeFrance is the object of suspicion in the disappearance of Jermain Charlo. While searching Mr. DeFrance's vehicle and residence during a State of Montana homicide investigation, the firearms in this case were seized by lead Missoula Detective, Guy Baker. In his role as a law enforcement Detective Baker wears two hats as both a state and a federal agent. In this connection we are informed, believe, and thereon allege that Detective Baker has close and continuous contact with Jermain Charlo's family, keeping them apprised of all case development's related to Ms. Charlo's

15

disappearance.  However, lacking evidence to charge Mr. DeFrance for deliberate homicide in State Court, Detective Baker has aggressively pursued the charges in this case against Mr. DeFrance.

Furthermore, the undersigned and persons from the undersigned's office have seen at least one poster at the United States Attorney's Office in Missoula depicting the visage of Jermain Charlo and requesting that all leads regarding her whereabouts be promptly reported to law enforcement.  Also Ms. Charlo's disappearance is the subject of a popular Podcast (*Stolen*: *The Search for Jermain*) on which Detective Baker has been a guest[1].  Also, Detective Baker along with numerous relatives and friends of Ms. Charlo routinely show up, as do the press, at all of Mr. DeFrance's court appearances.  At Mr. DeFrance's initial appearance on the original indictment in Judge DeSoto's Court, the courtroom was packed raising the concern whether any or all of those people had been alerted to Mr. DeFrance's sealed indictment beforehand.  These circumstances at least suggest that the relationship between Detective Baker in his capacity as a state investigator and a federal agent is awfully blurry.  *See e.g., United States v. Alvarez-Sanchez*, 511 U.S. 350, 359 fn. 4 (1994) (collusive arrangement between state and federal authorities raised cause for

---

[1] In episode 1 for example Detective Baker states at the opening of the Podcast that Jermain's family was not told the truth.  But Detective Baker goes on to state that he knows the truth.

concern). Which likewise suggests that the government's death-grip hold on these weak federal charges has some purpose other than seeing Mr. DeFrance being brought to justice for firearms violations.

The desire to incarcerate Mr. DeFrance for "something" might be considered speculative. But an experienced law enforcement officer like Detective Baker who has apparently promised the Charlo family that Mr. DeFrance will be brought to justice somehow, knows that once Mr. DeFrance is incarcerated on any charge the chances of the jailhouse informant scenario developing would not be far-fetched. Inmates watch TV and read the news, and are often well disposed to implicate fellow inmates with false narratives in order to secure their own liberty.

## **CONCLUSION**

WHEREFORE, this Court should hold a hearing and the second superseding indictment should be dismissed.

RESPECTFULLY SUBMITTED this 20th day of December, 2021.

                                      /s/ Michael Donahoe
                                      MICHAEL DONAHOE
                                      Deputy Federal Defender
                                      Counsel for Defendant

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief is in compliance with Local Rule 7.1(d)(2)(as amended). The brief's line spacing is double-spaced, and is proportionately spaced, with a 14-point font size and contains less than 6,500 words. (Total number of words: 3,909 excluding tables and certificates).

RESPECTFULLY SUBMITTED this 20th day of December, 2021.

/s/ Michael Donahoe
MICHAEL DONAHOE
Deputy Federal Defender
Counsel for Defendant

# CERTIFICATE OF SERVICE
## L.R. 5.2(b)

I hereby certify that on December 20, 2021, a copy of the foregoing document was served on the following persons by the following means:

__1__       CM-ECF

__2__       Mail

1. CLERK, UNITED STATES DISTRICT COURT

1. JENNIFER S. CLARK
    Assistant United States Attorney
    United States Attorney's Office
    105 E. Pine, 2nd Floor
    P.O. Box 8329
    Missoula, MT 59807
        Counsel for the United States of America

2. MICHAEL BLAKE DeFRANCE
    Defendant

                           /s/ Michael Donahoe
                           FEDERAL DEFENDERS OF MONTANA