IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 21–29–M–DLC |
| Plaintiff, | |
| vs. | ORDER |
| MICHAEL BLAKE DEFRANCE, | |
| Defendant. | |

Before the Court are Defendant Michael Blake DeFrance's Motion to

Dismiss Indictment for Lack of Specificity and Failure to State an Offense (Doc.

14), Motion to Dismiss Indictment Because Montana PFMA (§ 45-5-206 (2011)) is

Indivisible and an Unconstitutional Noncategorical Version of 18 U.S.C.

§ 921(a)(33)(A)(ii) (Doc. 16), and Third Motion to Dismiss Superseding

Indictment (Doc. 43).  The Court will deny each of these motions to dismiss.[1]

## BACKGROUND

On July 28, 2021, the United States charged Mr. DeFrance with one count of

prohibited person in possession of firearms and ammunition, in violation of 18

---

[1] Mr. DeFrance has filed a Motion to Dismiss the Second Superseding Indictment
(Doc. 69), which is not yet fully briefed and which this Order does not address.
The Court's Order excluding all time from September 15, 2021 to the disposition
of all pretrial motions from any Speedy Trial Act calculations in this matter
pursuant to 18 U.S.C. § 3161(h)(1)(D) remains in full force and effect.  (Doc. 64.)

U.S.C. § 922(g)(9).  (Doc. 2.)  Specifically, the Indictment alleged:

> That on or about June 27, 2018 and October 2, 2018, at Missoula, in Missoula County, in the State and District of Montana, the defendant, MICHAEL BLAKE DEFRANCE, knowing he had been convicted on or about May 6, 2013, of a misdemeanor crime of violence under the laws of the State of Montana, knowingly possessed, in and affecting interstate commerce, firearms and ammunition, in violation of 18 U.S.C. § 922(g)(9).

(*Id.* at 1–2.)

On August 13, 2021, Mr. DeFrance moved to dismiss the indictment under Rule 12(b)(3)(B)(iii) and (v) of the Federal Rules of Criminal Procedure for lack of specificity and failure to state an offense.  (Doc. 14.)  On August 18, 2021, Mr. DeFrance filed a second motion to dismiss the indictment on the grounds that Montana's Partner and Family Member Assault statute (Mont. Code Ann. § 45-5-206) is indivisible and an unconstitutional noncategorical version of 18 U.S.C. § 921(a)(33)(A)(ii).  (Doc. 16.)

On August 26, 2021, the United States filed a Superseding Indictment, which charged Mr. DeFrance with one count of prohibited person in possession of firearms and ammunition, in violation of 18 U.S.C. § 922(g)(9).  (Doc. 21.)  The Superseding Indictment alleged:

> That on or about June 27, 2018, and October 2, 2018, at Missoula, in Missoula County, in the State and District of Montana, the defendant, MICHAEL BLAKE DEFRANCE, knowing he had been convicted on or about May 6, 2013, of a misdemeanor crime of domestic violence under the laws of the State of Montana, which meets the definition of a misdemeanor crime of domestic violence under 18 U.S.C.

§ 921(a)(33)(A)(i) and (ii), knowingly possessed, in and affecting interstate commerce, firearms and ammunition, in violation of 18 U.S.C. § 922(g)(9).

(*Id.* at 1–2.)

The Court held a hearing on the first and second motions to dismiss on September 13, 2021.  (Doc. 39.)  On September 17, 2021, Mr. DeFrance filed a third motion to dismiss the indictment on the grounds that the elements of the offense are too vague to provide sufficient definiteness that ordinary people can understand what is prohibited and fail to provide adequate standards for those who apply the law.  (Doc. 43 at 3.)

On October 21, 2021, the United States filed a Second Superseding Indictment.  (Doc. 55.)  The Second Superseding Indictment charged the prohibited person in possession of firearms and ammunition offense as Count I and alleged:

That on or about and between October 3, 2016, and October 2, 2018, at Missoula, in Missoula County, in the State and District of Montana, the defendant, MICHAEL BLAKE DEFRANCE, knowing he had been convicted on or about May 6, 2013, of a misdemeanor crime of domestic violence under the laws of the State of Montana, which meets the definition of a misdemeanor crime of domestic violence under 18 U.S.C. § 921(a)(33)(A)(i) and (ii), knowingly possessed, in and affecting interstate commerce, firearms and ammunition, in violation of 18 U.S.C. § 922(g)(9).

(*Id.* at 2.)  Aside from setting forth an earlier date for the start of the alleged offense, the allegations are substantively identical to those in the Superseding

Indictment.  The Second Superseding Indictment further charges three counts of false statement during a firearms transaction, in violation of 18 U.S.C. § 922(a)(6), as Counts II–IV.  (*Id.* at 2–4.)  Counts II–IV allege that on three separate occasions in 2018, Mr. DeFrance knowingly made a false or fictitious written statement that he had not been convicted in any court of a misdemeanor crime of domestic violence in connection with his acquisition and attempted acquisition of a firearm.  (*Id.*)  On November 24, 2021, Mr. DeFrance renewed his first, second, and third motions to dismiss so that the Court would consider them applicable to the Second Superseding Indictment.  (Doc. 65.)

**ANALYSIS**

## I.    Motion to Dismiss for Lack of Specificity and Failure to State an Offense

### A. Legal Standards

Rule 12 of the Federal Rules of Criminal Procedure authorizes a defendant to move to dismiss an indictment for lack of specificity and for failure to state an offense.  Fed. R. Crim. P. 12(b)(3)(B)(iii), (v).

A motion to dismiss for lack of specificity requires a court to review an indictment "in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied."  *United States v. Berger*, 473 F.3d 1080, 1103 (9th Cir. 2007) (quoting *United States v. King*, 200 F.3d 1207, 1217

4

(9th Cir. 1999)).  The test is not "whether [the indictment] could have been framed in a more satisfactory manner, but whether it conforms to the minimal constitutional standards."  *United States v. Awad*, 551 F.3d 930, 935 (9th Cir. 2009) (quoting *United States v. Hinton*, 222 F.3d 664, 672 (9th Cir. 2000)).  An indictment meets constitutional and procedural muster if it "state[s] the elements of the offense charged with sufficient clarity to apprise a defendant of the charge against which he must defend and enable him to plead double jeopardy."  *Hinton*, 222 F.3d at 672.

Furthermore, as long as the applicable statute clearly sets out the crime's essential elements, "[t]he use of a 'bare bones' information—that is one employing the statutory language alone—is quite common and entirely permissible" in the Ninth Circuit.  *United States v. Woodruff*, 50 F.3d 673, 676 (9th Cir. 1995) (quoting *United States v. Crow*, 824 F.2d 761, 762 (9th Cir. 1987)).  Consequently, "the language of the statute may be used in the general description of an offence," as long as it is "accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence . . . with which he is charged."  *Hamling v. United States*, 418 U.S. 87, 117–18 (1974).

On a motion to dismiss for failure to state an offense, "the district court is bound by the four corners of the indictment."  *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).  Distinguished from pre-trial motions to dismiss premised

on other grounds—where the court may take evidence and make factual determinations—the court considering a motion for failure to state an offense "must accept the truth of the allegations in the indictment[.]" *Id.* "The indictment either states an offense or it doesn't." *Id.* To ensure that "the respective provinces of the judge and jury are respected," a Rule 12(b)(3)(B)(v) motion to dismiss "cannot be used as a device for a summary trial of evidence." *Id.* (quoting *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996)). To that end, "[t]he Court should not consider evidence not appearing on the face of the indictment." *Id.* (quoting *Jensen*, 93 F.3d at 669).

### B. Discussion

Mr. DeFrance's motion (Doc. 14), which was filed before the Superseding Indictment was filed, contends that (1) the Indictment "fails to specify in any detail whatsoever the domestic relationship element required to be alleged in a § 922(g)(9) prosecution[,]" and (2) the Indictment "does not include the status allegations required by *Rehaif v. United States*, 139 S. Ct. 2191 (2019)." (Doc. 14 at 3.)

After the Superseding Indictment was filed, the United States responded to Mr. DeFrance's motion by arguing (1) the motion to dismiss for lack of specificity regarding the relationship element of § 922(g)(9) was mooted by the Superseding Indictment, and (2) both the Indictment and Superseding Indictment allege that Mr.

DeFrance knew he had been convicted of a misdemeanor crime of domestic violence and knowingly possessed a firearm.  (Doc. 25 at 6–8.)

In reply, Mr. DeFrance argued that the Superseding Indictment does not allege any facts to support the allegation that his state conviction meets the definition of a misdemeanor crime of domestic violence under 18 U.S.C. § 921(a)(33)(A), particularly because the relationship elements of Montana's PFMA and 18 U.S.C. § 921(a)(33)(A) are not identical.  (Doc. 31 at 2–6.)  These purportedly missing facts are key, Mr. DeFrance asserts, because the government must prove he knew he was "covered by the relevant category of relationship under the federal statute."  (*Id.* at 4.)

As discussed above, Count I of the Second Superseding Indictment is substantively identical to the Superseding Indictment except to the extent that it alleges an earlier beginning date for the start of the offense.  The Second Superseding Indictment states the elements of the § 922(g)(9) offense with sufficient particularity to apprise Mr. DeFrance of the charge against which he must defend.  *Hinton*, 222 F.3d at 672.  The statute makes it a crime "for any person . . . who has been convicted in any court of a misdemeanor crime of domestic violence" to possess any firearm or ammunition in or affecting interstate or foreign commerce.  18 U.S.C. § 922(g)(9).  The statute defines a "misdemeanor crime of domestic violence" as "an offense that . . . is a misdemeanor under

Federal, State, or Tribal law" and "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim."  18 U.S.C. § 921(a)(33)(A).

The Second Superseding Indictment alleges that Mr. DeFrance knew "he had been convicted on or about May 6, 2013, of a misdemeanor crime of domestic violence under the laws of the State of Montana, which meets the definition of a misdemeanor crime of domestic violence under 18 U.S.C. § 921(a)(33)(A)."  (Doc. 55 at 2.)  It further alleges that, knowing this fact, he "knowingly possessed, in and affecting interstate commerce, firearms and ammunition, in violation of 18 U.S.C. § 922(g)(9)" on or about and between "October 3, 2016, and October 2, 2018[.]" (*Id.*)  The Second Superseding Indictment provides a sufficient factual basis for Mr. DeFrance to ascertain the predicate conviction and related facts that the United States alleges satisfy § 921(a)(33)(A), including the relationship element.

The Court rejects Mr. DeFrance's assertion that the Second Superseding Indictment must have alleged additional facts showing that the domestic relationship underlying the predicate conviction fell within the categories of domestic relationships listed in the federal statute.  This Court's decision in *United*

*States v. Meech*, 487 F. Supp. 3d 946 (D. Mont. 2020), is instructive.  There, the defendant moved to dismiss an indictment charging a violation of 18 U.S.C. § 922(a)(6), which makes it a crime for any person, in connection with the acquisition or attempted acquisition of a firearm from a licensed firearm dealer, to knowingly make any false written or oral statement intended or likely to deceive the dealer with respect to any fact material to the lawfulness of the firearm sale. *Id.* at 950.  The indictment alleged that the defendant falsely responded to Question "11(h) on ATF Form 4463" by stating that he was not subject to a court restraining order, and it stated the location and date of the charged activity.  *Id.*  The Court rejected the defendant's assertion that the indictment was defective because it did not contain any reference to any particular restraining order, concluding that "the indictment tracks the language of the statute and is accompanied by sufficiently specific facts" to inform the defendant of the crime charged, enable him to prepare a defense, and allow him to plead double jeopardy in the future.  *Id.* at 950–51.  This was true even though the United States would bear the burden at trial of proving that he was subject to a restraining order.  *Id.* at 953.  Likewise, here, the United States must prove at trial that Mr. DeFrance was convicted of a misdemeanor crime of domestic violence as defined by § 921(a)(33)(A), including that the offense was committed against a person who was in one of the specified relationships with the defendant.  *United States v. Hayes*, 555 U.S. 415, 426

9

(2009).  The Second Superseding Indictment here is *more* specific than the indictment found sufficient in *Meech* because it specifies the date of the predicate conviction on which the United States relies and therefore provides sufficient information for Mr. DeFrance to prepare a defense, including any defense that the predicate conviction or the relationship underlying it does not meet the definition of § 921(a)(33)(A).  Mr. DeFrance's motion to dismiss for lack of specificity under Rule 12(b)(3)(B)(iii) is therefore denied.

Furthermore, the Second Superseding Indictment states an offense.  "[I]n a prosecution under 18 U.S.C. § 922(g) . . . , the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm."  *Rehaif v. United States*, 139 S. Ct. 2191, 2200 (2019).  The United States need not prove, and accordingly the indictment need not allege, that Mr. DeFrance "knew his . . . status prohibited firearm ownership or possession."  *United States v. Singh*, 979 F.3d 697, 727 (9th Cir. 2020), *cert. denied sub nom. Matsura v. United States*, 141 S. Ct. 2671 (2021).

As discussed above, the Second Superseding Indictment sufficiently alleges that Mr. DeFrance knew he had been convicted of a misdemeanor crime of domestic violence under the laws of the State of Montana, which the United States alleges places him in the relevant category of persons barred from possessing a

10

firearm under § 922(g)(9), and it alleges that he knowingly possessed, in and affecting interstate commerce, firearms and ammunition.  (Doc. 55 at 2.) Accordingly, Mr. DeFrance's motion to dismiss for failure to state an offense under Rule 12(b)(3)(B)(v) is denied.

## II.     Motion to Dismiss Because Montana's PFMA is Indivisible and Unconstitutional Noncategorical Version of 18 U.S.C. § 922(a)(33)(A)(ii)

Mr. DeFrance argues that the relevant 2011 version of Montana's PFMA cannot serve as a predicate conviction to support a § 922(g)(9) prosecution because (1) it can be committed without the use, threatened use, or attempted use of force because the statutory term "bodily injury" is indivisible and includes both mental and emotional harm, which can be inflicted without the use of force; and (2) the relationship element of the PFMA is indivisible and overbroad relative to the federal relationship element defined by § 921(a)(33)(A).  (Doc. 16 at 2.)  The brief in support of his motion further argues that the 2011 statute, under which Mr. DeFrance was convicted, denies equal protection on the basis of sex and sexual orientation because the statute defined partners as "spouses, former spouses, persons who have a child in common, and persons who have been or are currently in a dating or ongoing intimate relationship with a person of the opposite sex." (Doc. 17 at 9–11.)  The statute was amended effective April 18, 2013—four days

after Mr. DeFrance committed the offense at issue here (Doc. 17-1 at 37)—and the only statutory revision relevant for the purposes of this Order was the removal of the language "with a person of the opposite sex" from subsection (2)(b).  2013 Mont. Laws 804.

The United States responds that the PFMA statute is materially indistinguishable from the Tennessee statute the Supreme Court analyzed in *United States v. Castleman*, 572 U.S. 157 (2014), which the Court held required the use of force within the meaning of § 921(a)(33)(A).  (Doc. 29 at 5–12.)  The United States further argues that Mr. DeFrance's argument that the PFMA's relationship element is categorically overbroad is foreclosed by Ninth Circuit precedent, in which the court of appeals considered and rejected a substantively identical argument concerning a Hawaii domestic abuse statute.  (*Id.* at 12–15.)  Concerning Mr. DeFrance's equal protection argument, the United States asserts that dismissal of this indictment on that basis is not appropriate because this prosecution does not open the predicate conviction to a collateral attack.  (*Id.* at 5 n.2.)

Mr. DeFrance argues in his reply that *Castleman* is distinguishable because the parties to that case did not dispute that the Tennessee statute was divisible, while he contends that Montana's definition of "bodily injury" is indivisible. (Doc. 32 at 2–3.)  He further argues that the Court must apply a categorical analysis to the relationship elements of each statute because permitting the United

States to prove at trial that the relationship underlying the predicate conviction satisfies the federal definition would permit the government to impeach the state court record and relitigate the state offense in violation of the Fifth and Tenth Amendments.  (*Id.* at 3–5.)  In closing, he argues that his equal protection argument is not a collateral attack, but rather an attack on an element of the PFMA statute "that the government is presently trying to enforce," and, "[c]onsidering that all non-heterosexual couples were immune from prosecution for Montana PFMA until 2013, the government cannot show why this prosecution should go forward based on an *unconstitutional*, narrower element."  (*Id.* at 5–6.)

### A. Legal Standards

Rule 12(b)(1) of the Federal Rules of Criminal Procedure provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."  A pretrial motion is proper when "it involves questions of law rather than fact."  *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986).  The Court concludes that each of the issues Mr. DeFrance raises in this motion (Doc. 16) involves questions of law that may be resolved before trial.

### B. Discussion

#### 1. Force Element

To qualify as a "misdemeanor crime of domestic violence," the predicate

conviction underlying a § 922(g)(9) charge must have as an element "the use or attempted use of physical force, or the threatened use of a deadly weapon[.]"  18 U.S.C. § 921(a)(33)(A).  The Court must begin with the categorical approach and "look to the statute of [Mr. DeFrance's] conviction to determine whether that conviction necessarily 'ha[d], as an element, the use or attempted use of physical force[.]'"  *Castleman*, 572 U.S. at 168 (quoting 18 U.S.C. § 921(a)(33)(A)).

Montana's PFMA provides that:

> (1) A person commits the offense of partner or family member assault if the person:
> > (a) purposely or knowingly causes bodily injury to a partner or family member;
> > (b) negligently causes bodily injury to a partner or family member with a weapon; or
> > (c) purposely or knowingly causes reasonable apprehension of bodily injury in a partner or family member.

Mont. Code Ann. § 45-5-206(1).[2]  The statute focuses on the result of the

---

[2] Neither party contests that the statute is divisible as to this particular subsection, which "sets out one or more elements of the offense in the alternative[.]"  *Descamps v. United States*, 570 U.S. 254, 257 (2013).  The Court therefore may apply the modified categorical approach and consult the documents approved by *Shepard v. United States*, 544 U.S. 13 (2005)—the terms of the charging document, the terms of the plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information, *id.* at 26—"to determine whether his conviction did entail the elements necessary to constitute the generic federal offense."  *Castleman*, 572 U.S. at 169.

    Mr. DeFrance was charged with violating the PFMA, and the state court document entering his plea of guilty states: "I AM PLEADING GUILTY TO THIS CHARGE BECAUSE I DID THE FOLLOWING: On 4-4-2013 in Sanders County I caused bodily injury to my girlfriend." (Doc. 17-1 at 30–36.)  The Court concludes that this document is a comparable judicial record to a transcript of a plea colloquy, *see Shepard*, 544 U.S. at 26, and further concludes that Mr. DeFrance was convicted of violating Montana Code § 45-5-206(1)(a).  The Court therefore shall not consider whether subsections (b) or (c) necessarily require the use or

defendant's conduct—bodily injury—rather than the conduct itself, and the Court

therefore must consult the statutory definition of bodily injury in its categorical

analysis. *See United States v. Mann*, No. CR 09-75-GF-BMM, 2017 WL 1906606,

at *6 (D. Mont. May 9, 2017).  The Montana Code's general definition of "bodily

injury" for Title 45, which is identical to the definition applicable at the time of

Mr. DeFrance's conviction, is "physical pain, illness, or an impairment of physical

condition and includes mental illness or impairment."  Mont. Code Ann. § 45-2-

101(5).  Unlike subsection (1) of the PFMA, this definition does not set forth

multiple, alternative versions of a crime, and it therefore is not divisible.[3]

*Descamps*, 570 U.S. at 262.  This term is used or incorporated by reference in

several of Montana's misdemeanor assault statutes in addition to the PFMA.  *E.g.*,

Mont. Code Ann. §§ 45-5-201, 45-5-211.  The Court is therefore cognizant of the

fact that its determination whether Montana's definition of bodily injury as

incorporated by subsection (1)(a) of the PFMA categorically requires the use of

physical force will implicate the validity of past, present, and future prosecutions

for violations of 18 U.S.C. § 922(g)(9) predicated on assault offenses beyond the

---

attempted use of physical force or the threatened use of a deadly weapon.

[3] The legislature could revise this definition in a manner that would make it divisible and thus potentially avoid categorical approach pitfalls while preserving the broad scope of Montana's assault laws; for example, the definition could be structured similarly to Montana Code § 45-5-206(1): "(5) 'Bodily injury' means (a) physical pain, illness or an impairment of physical condition; or (b) mental illness or impairment."

PFMA.

Courts within this District previously have analyzed whether Montana's statutory definition of "bodily injury" necessarily requires the use of physical force, and in thorough and well-reasoned opinions, they have reached differing conclusions. *United States v. Goerndt*, No. CR 20-125-BLG-SPW, 2021 WL 1720907, at *1–4 (D. Mont. Apr. 30, 2021) (concluding that subsection (1)(a) of Montana's PFMA requires use of physical force as defined by 18 U.S.C. § 921(a)(33)); *United States v. Tymes*, No. CR 20-117-BLG-SPW, 2021 WL 1720906, at *1–4 (D. Mont. Apr. 30, 2021) (same); *Mann*, 2017 WL 1906606, at *5–7 (concluding that Montana's aggravated assault statute incorporating similar definition of "serious bodily injury" does not require use of force as defined by 18 U.S.C. § 924(e)(2)(B)(i)); *United States v. Ross*, No. CR 13-29-BLG-BMM, 2017 WL 1288425, at *2–4 (D. Mont. Apr. 6, 2017) (concluding that subsection (1)(a) of Montana's PFMA does not require use of physical force as defined by 18 U.S.C. § 924(e)(2)(B)(i)).  Although the decisions answering in the negative assessed the definition of bodily injury under the Armed Career Criminal Act, whose elements clause requires the use of "*violent* force—that is, force capable of causing physical pain or injury to another person[,]" *Johnson v. United States*, 559 U.S. 133, 140 (2010), the court's reasoning that "subjecting someone to a public tirade of insults or emotional abuse also could cause mental illness or impairment" suggests that no

16

physical force whatsoever might be required to sustain a conviction under subsection (1)(a) of Montana's PFMA. *Ross*, 2017 WL 1288425, at *4.

As these divergent opinions illustrate, the issue before the Court presents a close question that could lead reasonable jurists to opposite answers. The Court concludes, however, that it is bound by the Supreme Court's decision in *Castleman* that, within the context of a 18 U.S.C. § 922(g)(9) prosecution, "a 'bodily injury' must result from 'physical force[,]'" even where the statute at issue defines bodily injury to include "'temporary illness or impairment of the function of a . . . mental faculty.'" 572 U.S. at 170 (quoting Tenn. Code Ann. § 39-11-106(a)(2) (1997)). The Court agrees with the *Goerndt* court's conclusion that the divergence in the relevant language of Montana's definition of bodily injury compared to Tennessee's—"mental illness or impairment" versus "temporary illness or impairment of the function of a . . . mental faculty"—is "a distinction without a difference." *Goerndt*, 2021 WL 1720907, at *3–4. The Court likewise agrees with the *Goerndt* court that this conclusion is consistent with the Supreme Court's recent reminder that it has "repeatedly declined to construe" a federal statute requiring a predicate state conviction, including § 922(g)(9), "in a way that would render it inapplicable in many States." *Stokeling v. United States*, 139 S. Ct. 544, 552 (2019). A holding that subsection (1)(a) of Montana's PFMA categorically is not a misdemeanor crime of domestic violence based on Montana's definition of

17

"bodily injury" would disqualify several Montana assault offenses from serving as predicate misdemeanor crimes of domestic violence for a § 922(g)(9) offense, which would frustrate Congress' intent in enacting the statute. *Castleman*, 572 U.S. at 167–68.

In his reply brief, Mr. DeFrance attempts to distinguish *Castleman* because the parties before the Court in that case conceded divisibility of the Tennessee statute, while he argues that Montana's PFMA is indivisible. (Doc. 32 at 2.) However, the parties' respective positions are materially identical here. Neither party here argues that subsection (1) of the PFMA is indivisible. (*E.g.*, Doc. 16 at 2 (arguing instead that the term "bodily injury" and the relationship element are indivisible).) Likewise, the parties in *Castleman* did not contest that Tennessee's assault statute was divisible, and the Court easily concluded by reference to the *Shepard* documents that Castleman—like Mr. DeFrance—"pleaded guilty to having 'intentionally or knowingly cause[d] bodily injury'" to the victim. 572 U.S. at 169. The Court did not need to address the divisibility of Tennessee's definition of bodily injury because it concluded that all of "th[o]se forms of injury do necessitate force in the common-law sense." 572 U.S. at 170.

Admittedly, no party before the *Castleman* court raised the precise argument that some mental impairments could be caused without the use or attempted use of physical force. But even if *Castleman* could be distinguished on that basis, under

the categorical approach, there must be "a realistic probability, not a theoretical possibility" that Montana would apply the PFMA (or other assault statutes using the definition of "bodily injury" at issue) in cases that did not involve the use or attempted use of physical force, or the threatened use of a deadly weapon. *United States v. Perez*, 932 F.3d 782, 789 (9th Cir. 2019) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).  Mr. DeFrance's counsel conceded at oral argument on this motion that he could provide no examples of PFMA convictions based on conduct that did not involve the use or attempted use of physical force, and the Court could find none.  The *Ross* court likewise "found no Montana decision directly on point" but identified some cases supporting its conclusion that Montana's PFMA categorically did not require violent physical force within the meaning of the ACCA.  *Ross*, 2017 WL 1288425, at *4.  This Court, however, concludes that those cases do not support a conclusion that there is a realistic probability that Montana would apply the PFMA or other assault statutes in cases that did not involve the use or attempted use of physical force within the meaning of § 921(a)(33)(A).

First, the *Ross* court concluded that in *State v. Cooney*, 963 P.2d 1272 (Mont. 1998), and 1 P.3d 956 (Mont. 2000), "the Montana Supreme Court held that the continuing detention of a defendant convicted of, and committed for, stalking was justified, because his release was likely to cause serious mental

19

consequences to his victim" and the State therefore proved that his release presented a substantial risk of serious bodily injury or an immediate threat of physical injury without having to prove that the defendant likely would have any physical contact with the victim. *Ross*, 2017 WL 1288325, at *4. But the commitment proceeding at issue was not a criminal prosecution, but rather a civil proceeding in which the State bore the burden of proof by clear and convincing evidence, *see Cooney*, 963 P.2d at 1273, and the evidence in that case of the victim's mental distress "related to fears of her own and her family's safety[,]" *id.* at 1274—fears that stemmed from apprehension of *physical* injury if she did not respond to the defendant's stalking, according to her trial testimony, *State v. Cooney*, 894 P.2d 303, 305, 307 (Mont. 1995). This Court concludes that the *Cooney* civil commitment decisions do not show a reasonable probability that Montana would criminally prosecute a defendant under its PFMA or assault statutes for conduct that does not involve the use or attempted use of physical force.

Second, the *Ross* court concluded that in *State v. Sherer*, 60 P.3d 1010 (Mont. 2002), the Montana Supreme Court "explain[ed] that the aggravated assault statute did not require the State to prove the defendant used force" because the state court "reasoned that 'any form of communication, itself, may be sufficient conduct' for a defendant to cause serious bodily injury under Montana law." 2017

20

WL 1288425, at *4 (quoting *Sherer*, 60 P.3d at 1013).  But in the context of

§ 921(a)(33)(A), the Supreme Court made clear in several ways that a narrow

focus on the defendant's conduct, to the exclusion of evidence of intent or resulting

harm, is not dispositive in determining whether an offense involved physical force:

"physical force is simply force exerted by and through concrete bodies," and "[t]he

force used in battery need not be applied directly to the body of the victim" and

could include administering a poison, infecting with a disease, or resort to an

intangible substance.  572 U.S. at 170 (internal quotation marks omitted).  In the

example of indirect force like the use of poison, the "use of force is not the act of

sprinkling the poison; it is the act of employing poison knowingly as a device to

cause physical harm."  *Id.* at 171 (internal quotation marks omitted).  The *Sherer*

court's decision is consistent with *Castleman*; in the same sentence quoted by the

*Ross* court, the Montana Supreme Court explained that the assault statutes at issue

"do not require that the defendant personally direct force toward the victim[.]"

*Sherer*, 60 P.3d at 1013.  The facts of *Sherer* are illustrative: the defendant was

convicted of aggravated assault despite the fact that his conduct was limited to

placing phone calls, impersonating a doctor, and instructing women to physically

harm themselves, because he did so with the intent that his conduct would cause

his victims to injure themselves, and one did so by cutting off her nipple in

accordance with his instructions.  *Id.* at 1013–14.  The use of force in his case was

not the mere act of communication; it was "the act of employing" that communication "knowingly as a device to cause physical harm" in the same way another wrongdoer might employ poison. *Castleman*, 572 U.S. at 171; *see also United States v. Villavicencio-Burruel*, 608 F.3d 556, 563 n.6 (9th Cir. 2010) (holding that statute prohibiting threats to kill or injure a person indirectly through destruction of property was categorically a crime of violence "because the force threatened need not be force administered directly by the hands of the perpetrator"). Although Sherer's conduct may not have qualified as "violent force" within the meaning of ACCA, it qualifies as the use of physical force under § 921(a)(33)(A) for the reasons explained in *Castleman*.

Finally, the *Ross* court concluded that in *State v. Mason*, 82 P.3d 903 (Mont. 2003), *overruled on other grounds by State v. Herman*, 188 P.3d 978 (Mont. 2008), "the Montana Supreme Court agreed that a defendant may be a 'violent felony offender' if he 'causes serious bodily injury to another' in the form of 'a serious mental health condition,' although under the circumstances of the case it found no evidence that the defendant caused the victim to develop such a condition." 2017 WL 1288425, at *4. The Montana Supreme Court held in that case that the trial court erred by designating the defendant as a violent felony offender at sentencing because there was no evidence that the defendant's physical assaults of a minor *caused* the minor's Post-Traumatic Stress Disorder, which was diagnosed after the

22

minor's removal from the defendant's residence.  *Mason*, 82 P.3d at 909–10.  In this Court's view, this case does not support an inference that there is a reasonable probability that Montana would enforce its PFMA or assault statutes in the absence of physical force; to the contrary, it provides an example of how Montana's definition of bodily injury encompassing mental injury can be applied in a case that indisputably involved the use of physical force.

In sum, even if the Court did not consider *Castleman* dispositive on this issue, there is not "a realistic probability" that Montana would enforce the PFMA or other assault statutes using the definition of "bodily injury" at issue in cases that did not involve the use or attempted use of physical force.  *Perez*, 932 F.3d at 789.

The Court concludes that subsection (1)(a) of Montana's PFMA, Mont. Code Ann. § 45-5-206(1)(a), categorically requires the use or attempted use of physical force within the meaning of 18 U.S.C. § 921(a)(33)(A).

### 2.  Relationship Element

The Supreme Court held in *United States v. Hayes*, 555 U.S. 415 (2009), that "the domestic relationship [defined by 18 U.S.C. § 921(a)(33)(A)], although it must be established beyond a reasonable doubt in a § 922(g)(9) firearms possession prosecution, need not be a defining element of the predicate offense." *Id.* at 418.  Mr. DeFrance acknowledges that this holding would appear to foreclose his argument that the Court should conduct a categorical approach

comparison of the relationship elements of Montana's PFMA and § 921(a)(33)(A), but he argues that *Hayes*'s holding is not relevant to statutes like Montana's PFMA that *do* contain a relationship element.  (Doc. 17 at 3.)  He argues that the only definition that could apply to his offense under Montana's PFMA—"persons who have been or are currently in a dating or ongoing intimate relationship with a person of the opposite sex[,]" Mont. Code Ann. §45-5-206(2)(b) (2011)—is over-inclusive relative to the federal statute's relationship categories—"a current or former spouse, parent, or guardian of the victim, . . . a person with whom the victim shares a child in common, . . . a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or . . . a person similarly situated to a spouse, parent, or guardian of the victim[,]" 18 U.S.C. § 921(a)(33)(A)(ii).  (Doc. 17 at 3–6.)  He further argues that "re-litigation of the domestic relationship issue" would violate the Double Jeopardy Clause, his Sixth Amendment rights as protected by the categorical approach, and the Tenth Amendment's prohibition on commandeering.  (*Id.* at 6–7.)

The United States responds that Mr. DeFrance's argument is foreclosed by Ninth Circuit precedent, and that the practical effect of his interpretation of the statute would frustrate the purpose of § 922(g)(9) by allowing ordinary assault, but in some cases not domestic assault, to serve as a predicate misdemeanor crime of domestic violence.  (Doc. 29 at 12–15.)

The United States is correct that the Ninth Circuit has held that, because "the domestic relationship element . . . is an element of the *federal* offense under § 922(g)(9), to be proven at trial[,]" any "mismatch between the [state] and federal domestic violence statutes is not a basis for invalidating indictment." *United States v. Nobriga*, 474 F.3d 561, 563–64 (9th Cir. 2006), *abrogated on other grounds by Voisine v. United States*, 136 S. Ct. 2272 (2016); *see also Hayes*, 555 U.S. at 418. There is no basis in the text of the statute or legislative history and intent for a conclusion that the federal offense should have differing sets of elements based on whether the predicate offense includes a relationship element. To the contrary, Mr. DeFrance's argument would have the counterintuitive result, contrary to Congressional intent, that violent offenses containing no relationship element could qualify as predicate offenses for a § 922(g)(9) prosecution, but offenses expressly proscribing violence against a domestic relation would be excluded from the federal statute's coverage if they apply to siblings, extended family who cohabit with the victim, roommates, or others beyond the scope of the federal statute, even if the actual offense at issue had been committed by a parent, guardian, spouse, or someone similarly situated to the victim. *See Hayes*, 555 U.S. at 426–29 (explaining how the Court's interpretation of § 921(a)(33)(A)(ii) was consistent with Congress' intent in enacting § 922(g)(9) to close a "dangerous loophole" permitting domestic abusers to keep firearms). The Court concludes that

*Nobriga* and *Hayes* foreclose Mr. DeFrance's argument that the Court should engage in a categorical approach comparison of the relationship elements of his predicate offense and § 921(a)(33)(A)(ii) because the federal statute's definition of qualifying relationships is an element of the § 922(g)(9) offense, which the United States must prove beyond a reasonable doubt at trial. *Hayes*, 555 U.S. at 418; *Nobriga*, 474 F.3d at 563–64.

Mr. DeFrance's constitutional arguments against "re-litigation of the relationship element" or "impeach[ing] the state court record" fall short for the same reason. (Docs. 17 at 6, 32 at 5.) Mr. DeFrance's categorical approach argument hinges on his acknowledgement that the relationship elements of Montana's PFMA and § 921(a)(33)(A)(ii) are different from each other, which forecloses any argument that "the issue was necessarily decided in the prior case" as required for his Double Jeopardy collateral estoppel argument, *United States v. Bernhardt*, 840 F.2d 1441, 1448 (9th Cir. 1988),[4] or that this Court would be forced to "adjudicate state offenses" in a manner he alleges would violate the

---

[4] Additionally, the Court doubts that a defendant can invoke a prior *conviction* as opposed to a prior acquittal in support of a Double Jeopardy collateral estoppel argument. *United States v. James*, 109 F.3d 597, 601 (9th Cir. 1997) ("Constitutional collateral estoppel exists where a fact necessarily determined *in the defendant's favor by his earlier acquittal* [makes] his conviction on the challenged second trial . . . impossible unless the fact could be relitigated and determined adversely to the defendant." (emphasis added) (quoting *Pettaway v. Plummer*, 943 F.2d 1041, 1046 (9th Cir. 1991), *overruled on other grounds by Santamaria v. Horsley*, 133 F.3d 1242 (9th Cir. 1998))).

Tenth Amendment (Doc. 17 at 6–7).  As it concerns the relationship element, the

ultimate issue determined by his plea of guilty to the PFMA offense was that he

purposely or knowingly caused bodily injury to a person with whom he "ha[d]

been or [was] currently in a dating or ongoing intimate relationship."  Mont. Code

Ann. §45-5-206(2)(b) (2011).  The ultimate issue to be determined in this

§ 922(g)(9) prosecution is whether he was convicted of a misdemeanor crime of

domestic violence that he committed as "a person similarly situated to a spouse . . .

of the victim" or as a member of the other categories listed in 18 U.S.C.

§ 921(a)(33)(A)(ii).  This is not a case in which "[t]he single rationally conceivable

issue in dispute" in a prosecution—*e.g.*, the identity of a robber—has already been

determined by a final judgment.  *Ashe v. Swenson*, 397 U.S. 436, 445 (1970).  Had

Mr. DeFrance been tried before a jury for both PFMA and a lesser-included

offense of assault with no relationship element, and had he been acquitted of

PFMA but convicted of assault, Mr. DeFrance's Double Jeopardy argument may

have presented a closer question.  *See id.* at 444.  But on these facts, the Double

Jeopardy Clause does not prohibit this § 922(g)(9) prosecution merely because the

facts concerning Mr. DeFrance's relationship with the victim of his PFMA offense

are relevant to both his prior conviction and the present charge.  *See United States

v. Arlt*, 252 F.3d 1032, 1039 (9th Cir. 2001) (en banc) (rejecting Double Jeopardy

argument "even when the same conduct forms the basis for two charges").

Likewise, the difference between the statutes' relationship elements means that this case does not require re-litigation of the underlying offense or adjudication of a state offense, and Mr. DeFrance does not explain how the anti-commandeering principles of the Tenth Amendment apply to his indictment, so there is no jurisdictional defect or Tenth Amendment concern requiring dismissal of the indictment.

### 3.  Equal Protection

The Court need not determine whether the version of Montana's PFMA under which Mr. DeFrance was convicted, which limited its definition of "dating or ongoing intimate relationship" partners to couples "of the opposite sex[,]" Mont. Code Ann. § 45-5-206(2)(b) (2011), violated the Equal Protection Clause.  The Supreme Court has held that a "firearms prosecution does not open the predicate conviction to a new form of collateral attack[,]" and this holding forecloses Mr. DeFrance's Equal Protection argument.  *Lewis v. United States*, 445 U.S. 55, 67 (1980).  Mr. DeFrance argues that the United States "is presently trying to enforce" the allegedly unconstitutional relationship element of the prior PFMA statute (Doc. 32 at 5), but as explained above, the federal statute's relationship element is the element that must be proven in this case and need not be a categorical match for a relationship element of the predicate offense, *Nobriga*, 474 F.3d at 564, and as acknowledged by Mr. DeFrance in his other arguments, the federal element is

different from the PFMA's relationship element (Doc. 17 at 3–5). "The federal gun laws . . . focus . . . on the mere fact of conviction, or even indictment, in order to keep firearms away from potentially dangerous persons." *Lewis*, 445 U.S. at 67. The constitutionality of Mr. DeFrance's conviction may be challenged in other proceedings, but not here. *Id.*

For the foregoing reasons, the Motion to Dismiss Because Montana PFMA (§ 45-5-206 (2011)) is Indivisible and an Unconstitutional Noncategorical Version of 18 U.S.C. § 921(a)(33)(A) (Doc. 16) will be denied.

## III. Motion to Dismiss Because 18 U.S.C. § 921(a)(33)(A) is Unconstitutionally Vague

Mr. DeFrance argues that 18 U.S.C. § 921(a)(33)(A) is unconstitutionally vague. First, he argues that the statute does not provide fair warning to ordinary citizens because an individual would have to determine first whether the misdemeanor crime of which he or she was convicted had the required force element, and second whether the relationships set forth in the federal statute match any of the relationships set forth in the state statute under which the individual was convicted. (Doc. 44 at 3.) He argues that laypersons could not determine whether Montana's PFMA contains a force element under the categorical approach. (*Id.* at 3–10.)

Second, he argues that the statute fails to provide minimal standards to

govern law enforcement and the courts because the qualifying relationships are so broadly defined that the entirety of a relationship between a domestic violence misdemeanant and the victim could be relevant in a prosecution under 18 U.S.C. § 922(g)(9), and there is no definition for the qualifying relationship of "similarly situated" to a spouse.  (*Id.* at 10–17.)

The United States responds that several courts have rejected similar arguments, persons of ordinary intelligence can determine whether the victim of his or her prior misdemeanor crime of domestic violence was similarly situated to a spouse, and the term "force or threat of force" carries its common law meaning and is readily understandable.  (Doc. 50 at 3–7.)  The United States also recites facts relating to Mr. DeFrance's relationship with the victim of his PFMA offense, and it argues that the title of the statute under which he was convicted—Partner or Family Member Assault—put him on notice.  (*Id.* at 8.)  The United States further argues that the statute is distinct from unconstitutionally vague statutes that permit subjective or arbitrary enforcement, such as loitering statutes, because 18 U.S.C. § 921(a)(33)(A) defines the predicate offense conduct and required relationship status, and all case law confirms that the relationship element concerns the relationship at the time of the domestic violence offense.  (*Id.* at 9–10.)  The United States disagrees with Mr. DeFrance's argument that a prosecution under § 922(g)(9) requires relitigating the predicate PFMA conviction because the

statutes require proof of distinct elements.  (*Id.* at 11.)

Mr. DeFrance argues in his reply brief that it is unclear after the Supreme Court's decisions in *Hayes* and *Castleman* how the relationship element of a § 922(g)(9) offense should be resolved in a case in which the predicate offense contains a relationship element and argues that the categorical approach should apply to both the force and relationship elements of the offense.  (Doc. 53 at 2–3.) He argues that no layperson could determine on his own under the categorical approach whether a Montana PFMA offense triggers application of § 922(g)(9), particularly in light of the divergent opinions within this District concerning whether the PFMA requires the use of force, and the statute therefore does not provide fair notice of the conduct it prohibits.  (*Id.* at 2–5.)  Mr. DeFrance further argues that the government's brief's description of his relationship with the victim of his PFMA offense demonstrates the government's intent to "effectively re-litigate the relationship" element of that offense.  (*Id.* at 5–7.)  In closing, Mr. DeFrance argues that supplemental discovery disclosed that the victim of his PFMA offense was 17 years old at the time of the offense and questions whether a person can be similarly situated to a spouse when, under Montana law, a 17-year-old can only be married with parental consent or judicial approval.  (*Id.* at 7–8.)

### A. Legal Standards

As discussed previously, Rule 12(b)(1) of the Federal Rules of Criminal

Procedure provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."  A pretrial motion is proper when "it involves questions of law rather than fact." *Shortt Accountancy Corp.*, 785 F.2d at 1452.

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).  Mr. DeFrance raises both a facial challenge and an as-applied challenge to the statute. (Doc. 44 at 16–17.)  "Where the statute or regulation does not implicate constitutionally protected conduct, a facial challenge will succeed 'only if the enactment is impermissibly vague in all of its applications.'" *United States v. Doremus*, 888 F.2d 630, 634 (9th Cir. 1989) (quoting *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494–95 (1982)).[5]  An as-applied challenge, by contrast, assumes the truth of the allegations in the indictment and asks whether a person of average intelligence would understand that his conduct is proscribed under the statute.  *United States v. Bohonus*, 628 F.2d 1167, 1173–75

---

[5] Mr. DeFrance does not argue that the statute implicates constitutionally protected conduct, but he would face an uphill battle in doing so.  *United States v. Chovan*, 735 F.3d 1127, 1139–42 (9th Cir. 2013) (holding that 18 U.S.C. § 922(g)(9) was constitutional facially and as applied under the Second Amendment).

32

(9th Cir. 1980).

### B. Analysis

#### 1. Force Element

Mr. DeFrance's fair warning argument focuses heavily on the language of Montana's PFMA and how ordinary people may struggle to apply the categorical approach to determine whether a PFMA offense qualifies as a predicate offense under 18 U.S.C. § 922(g)(9).  (Doc. 44 at 3–10.)  But Mr. DeFrance cites no authority—and the Court could find none—for the proposition that the proper standard for a vagueness challenge is that an ordinary person must be able to determine as a matter of law whether a past offense categorically qualifies as a predicate offense for a federal firearms prohibition.  The lack of precedent is perhaps unsurprising.

The classic example of a facially unconstitutionally vague statute is the anti-loitering statute that fails to give any notice to ordinary people what conduct is prohibited; the only surefire way to avoid potential criminal penalties would be to cease going out into public.  *See Kolender*, 461 U.S. at 358.  In the context of the federal firearms statutes, the "residual clauses" that stumped ordinary people and experienced jurists alike in determining whether an offense "in the ordinary case" "involves conduct that presents a serious potential risk of physical injury to another" were held intolerably vague.  *E.g.*, *Johnson v. United States*, 576 U.S.

33

591, 596–97 (2015).  Key to those holdings was the fact that the residual clause "ties the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or *statutory elements*."  *Id.* at 597 (emphasis added). This distinction between a residual clause and an elements clause of a firearms statute does not mean that the statutory interpretation required for elements-clause analysis is simple enough for an ordinary person to understand or conduct on his or her own.  But this distinction *does* take the elements clauses like 18 U.S.C. § 921(a)(33)(A) comfortably out of the unconstitutionally vague realm.

The fair warning prong of the vagueness inquiry does not invalidate every statute whose application or interpretation is complex.  "That close questions may arise in interpreting the language of a statute or regulation does not, without more, render the enactment vague."  *United States v. Hogue*, 752 F.2d 1503, 1504 (9th Cir. 1985).  Rather, the "touchstone" of the "fair warning requirement" is "whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal."  *United States v. Lanier*, 520 U.S. 259, 266–67 (1997).  Sections 922(g)(9) and 921(a)(33)(A) meet that requirement on their faces and on the alleged facts of this case.  A person of ordinary intelligence can comprehend from that statutory language that a prior conviction for an offense with an element of the use or attempted use of force, committed against a spouse, child, or similarly situated person, will disqualify him

34

or her from possessing firearms or ammunition. *United States v. Meade*, 175 F.3d 215, 222 (1st Cir. 1999) ("Here, the statute *sub judice* contains no ambiguity either as to the persons to whom the prohibitions apply or as to what conduct is proscribed."); *United States v. Smith*, 171 F.3d 617, 623 (8th Cir. 1999) ("We would be hard pressed to find an individual of common, or even not so common, intelligence who could not determine whether he was in one of the enumerated relationships when he committed a misdemeanor crime including an element of physical force.").  And here, the United States has alleged that Mr. DeFrance knowingly possessed firearms and ammunition and knew he had been convicted of a misdemeanor crime of domestic violence under Montana law, which meets the definition of 18 U.S.C. § 921(a)(33)(A).  (Doc. 55 at 2.)  Mr. DeFrance has conceded in his briefing and submitted state court documents reflecting his admission that he pleaded guilty to his predicate offense because he "caused bodily injury to his girlfriend."  (Doc. 17-1 at 36; Doc. 53 at 5.)  Mr. DeFrance had ample notice that his alleged conduct in knowingly possessing a firearm and ammunition while knowing of his PFMA conviction would be criminal.

To be sure, application of the categorical approach may *exempt* some people from criminal liability or enhanced criminal penalties who otherwise would fall under within the common sense understanding of categories like a "person who has been convicted . . . of a misdemeanor crime of domestic violence[,]" 18 U.S.C.

§ 922(g)(9), or a person who has been convicted of a "violent felony[,]" 18 U.S.C.

§ 924(e).  But the legal nuances of the categorical approach—including *mens rea*,

divisibility, and the proper use of *Shepard* documents—do not render the statutory

language or its construction by courts so unclear that a "person of ordinary

intelligence" is deprived of "a reasonable opportunity to know what is prohibited,

so that he may act accordingly."  *Grayned v. Rockford*, 408 U.S. 104, 108 (1972).

The statute provides ample warning that certain domestic violence offenders face

criminal penalties for possessing a firearm.  It is not unconstitutionally vague.

### 2.  Relationship Element

Mr. DeFrance raises a dual challenge to the relationship element of

§ 921(a)(33)(A), arguing that it is unconstitutionally vague because it fails to

provide both fair notice to ordinary people and minimal guidelines to govern law

enforcement.

One argument in support of his fair notice challenge can be rejected outright.

As discussed above, the federal statute's relationship element does not have to be a

categorical match for the relationship element of a state predicate offense statute

because the state statute need not have a relationship element at all.  *Hayes*, 555

U.S. at 418.

Mr. DeFrance's argument that the statute is vague because it is unclear

whether the relationship element "is confined to the relationship as it existed" at

the time of the PFMA conviction or "whether it extends to the entire relationship history . . . up to and including the time of the federal § 922(g)(9) trial" is untenable under the language of the statute.  (Doc. 44 at 11.)  Section 921(a)(33)(A)(ii) requires that the predicate offense was "*committed* by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim."  18 U.S.C. § 921(a)(33)(A)(ii) (emphasis added).  The plain language of the statute ties the relationship element to the time the offense was committed; as the Supreme Court explained in *Hayes*, "[t]o obtain a conviction in a § 922(g)(9) prosecution, the Government must prove beyond a reasonable doubt that the victim of the predicate offense *was* the defendant's current or former spouse or *was* related to the defendant in another specified way."  555 U.S. at 426 (emphases added).  This is not to say that evidence post-dating the offense could never be relevant to proving or disproving the relationship element in a § 922(g)(9) prosecution; for example, a marriage certificate between the defendant and victim dated after the offense would be relevant evidence to show that they were not each other's current spouses at the time of the offense.  Such evidentiary questions are properly reserved for evidentiary motions and trial; for the purposes of this motion to dismiss, it suffices

37

to hold that the relationship element of the § 922(g)(9) offense is confined by the plain text of the statute to the relationship as it existed at the time of the predicate domestic violence offense.  18 U.S.C. § 921(a)(33)(A)(ii).

Mr. DeFrance next argues that the ordinary person cannot determine whether he or she is "similarly situated to a spouse" within the meaning of § 921(a)(33)(A)(ii), and the statute invites arbitrary and discriminatory enforcement.  The phrase "similarly situated" "add[s] some imprecision" to the element, but it "provide[s] an ascertainable, qualitative standard akin to others found in the law" and therefore "is not unconstitutionally vague."  *United States v. Lucero*, 989 F.3d 1088, 1103 (9th Cir. 2021); *see also Johnson*, 576 U.S. at 603–04 ("As a general matter, we do not doubt the constitutionality of laws that call for the application of a qualitative standard such as "substantial risk" to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree[.]'" (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913))).  The United States District Court for the Northern District of Georgia provided a thorough analysis of the "similarly situated to a spouse" relationship in *United States v. Cary*, No. 1:07-CV-074-WSD, 2008 WL 879433, at *2–4 (N.D. Ga. Mar. 29, 2008), in which the court acknowledged that the statute does not provide a precise definition of this term but collected numerous cases elaborating the contours of this relationship definition and facts relevant to

determining whether it is satisfied, including whether the parties engaged in an intimate relationship, stayed at each other's residences, or shared expenses, household responsibilities, and social activities.  An ordinary person can differentiate between spouse-like relationships and numerous relationships— platonic friendships, college roommates, or one-time coffee dates—that would not satisfy this element absent evidence of an intimate or guardian-like relationship. The statute is not unconstitutionally vague for failure to give fair warning of what is prohibited.

Likewise, the statute does not invite arbitrary or discriminatory enforcement. The fatal flaw of the anti-loitering statute at issue in *Kolender* was that it "vest[ed] virtually complete discretion in the hands of the police" and permitted freedom of public movement "only at the whim of any police officer who happens to stop that individual under" the statute.  461 U.S. at 358.  There was *no* standard for law enforcement officers to determine whether the person they stopped had provided sufficiently "credible and reliable" identification to end his detention.  *Id.* at 359– 61.  Here, by contrast, Section 922(g)(9) is not a blank check to law enforcement to detain random individuals indefinitely at the slightest suspicion.  Rather, it specifically proscribes a narrow class of conduct—possession of a firearm or ammunition—by a discrete class of people.  Because the statute's prohibition requires (1) a past conviction, (2) for an offense which must have a force element,

39

and (3) which must have been committed against a person in a specified relationship with the defendant, 18 U.S.C. § 921(a)(33)(A), its enforcement necessarily requires some background knowledge of the individual defendant's criminal history.  Section 922(g)(9) simply does not have the same potential for arbitrary or discriminatory detention or enforcement as a standardless anti-loitering statute that criminalizes existing in public.  *Kolender*, 461 U.S. at 358–61.

To the extent a particular defendant contends that his relationship with the victim of his predicate offense lies at the outer margins of a relationship "substantially similar" to a spouse, parent, or guardian, he may present supporting evidence or argue that the government has not met its burden of proving that element to a jury.  However, the Court cannot say as a matter of law that the relationship element unconstitutionally permits arbitrary enforcement or that such arbitrariness is evident here, where the record establishes that Mr. DeFrance acknowledged he had a boyfriend-girlfriend relationship with the victim of his PFMA offense.  (Doc. 17-1 at 36; Doc. 53 at 5.)

One example of such an argument Mr. DeFrance could make to the jury is raised for the first time in his reply brief:  The victim of Mr. DeFrance's PFMA offense should not be considered "similarly situated to a spouse" because she was seventeen years old at the time of the offense, and a person under the age of eighteen cannot be married in Montana without parental consent or judicial

approval.  (Doc. 53 at 7–8 (citing Mont. Code Ann. § 40-1-213).)  The Court

typically declines to consider arguments raised for the first time in a reply brief.

*Mont. Fair Hous., Inc. v. City of Bozeman*, 854 F. Supp. 2d 832, 846 (D. Mont.

2012).  Regardless, this argument does not support Mr. DeFrance's contention that

the statute is unconstitutionally vague and is not a legal basis for dismissing the

indictment.  The Court cannot say as a matter of law that a victim's age of

seventeen renders totally irrelevant the facts discussed above, like the existence of

an intimate relationship and shared responsibilities, that could establish that the

predicate offense was committed by a person similarly situated to a spouse of that

victim, particularly because Montana law provides a process for minors sixteen

and older to obtain some rights of adults, including the right to live independently.

*See* Mont. Code Ann. §§ 41-1-501–503.

        In sum, Sections 921(a)(33)(A) and 922(g)(9) are not unconstitutionally

vague on their face or as applied because they provide sufficient notice to ordinary

persons of what conduct is prohibited and provide minimal guidelines to govern

law enforcement.  *See Kolender*, 461 U.S. at 357–58; *Bohonus*, 628 F.2d at 1173–

75.

## CONCLUSION

        IT IS ORDERED that the Motion to Dismiss Indictment for Lack of

Specificity and Failure to State an Offense (Doc. 14) is DENIED.

IT IS FURTHER ORDERED that the Motion to Dismiss Indictment

Because Montana PFMA (§ 45-5-206 (2011)) is Indivisible and an

Unconstitutional Noncategorical Version of 18 U.S.C. § 921(a)(33)(A)(ii) (Doc.

16) is DENIED.

IT IS FURTHER ORDERED that the Third Motion to Dismiss the

Superseding Indictment (Doc. 43) is DENIED.

DATED this 29th day of December, 2021.

Dana L. Christensen, District Judge
United States District Court