MICHAEL DONAHOE
Deputy Federal Defender
Federal Defenders of Montana
Helena Branch Office
50 West 14th Street, Suite 1
Helena, Montana 59601
Phone: (406) 449-8381
Fax: (406) 449-5651
Email:  michael_donahoe@fd.org
Attorneys for Defendant

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL BLAKE DeFRANCE,<br><br>Defendant. | CR 21-29-M-DLC<br><br>DEFENDANT DeFRANCE'S REPLY BRIEF IN SUPPORT OF OPPOSED MOTION TO DISMISS SECOND SUPERSEDING INDICTMENT BASED ON *BRADY* ERROR, PROCEDURAL DUE PROCESS, COLLATERAL ESTOPPEL, AND VINDICTIVE PROSECUTION UNDER RULE 12(b)(3)(A)(iv) |

## INTRODUCTION

Mr. DeFrance has filed a motion to dismiss the second superseding indictment (ECF No. 69 and 70). The government has answered with Exhibits (ECF No. 72, 72-1 – 72.3). Following are Mr. DeFrance's reply arguments.

1

## REPLY ARGUMENTS

*1. Reply arguments on the government's Exhibits (ECF No. 72-1 through 72-3).*

On page 7 of its brief the government makes reference to Exhibits 1-3. We comment here on all three exhibits.

First, although we assume but do not concede that (ECF No. 72-1) is the equivalent of a judicial record *ala Shepard v. United States,* 544 U.S. 13 (2005), such record does not indicate that Mr. DeFrance's guilty plea operated to permanently deny Mr. DeFrance's firearms rights. To the contrary the record shows that Mr. DeFrance was advised that "loss of firearms rights" was a "possible consequence[]"of the plea nothing more (ECF No. 72-1, p. 2). The judicial record speaks for itself and cannot and should not be overridden now by supplemental parole evidence.

Second, ECF No. 72-2 is a telephone interview that Detective Baker conducted on retired Judge Strine regarding Mr. DeFrance's PFMA guilty plea. Apparently recognizing that the judicial record of that plea fails to establish that Mr. DeFrance was advised that the guilty plea permanently served to revoke Mr. DeFrance's firearms privileges, the interview seeks to impeach the judicial record by Judge Strine's current assertion that he told Mr. DeFrance at the time of the plea that Mr. DeFrance's firearms rights were permanently lost. Again, this is not part of the judicial record.

Third, even if Judge Strine told Mr. DeFrance that his firearms rights were permanently lost as a result of the PFMA guilty plea the advice was wrong. Clearly, from the judicial record Judge Strine neither knew nor did he inquire whether Mr. DeFrance was living with the PFMA victim as a spouse. Moreover, the relationship element stated in the judicial record is "girlfriend". Given that state law did not cause the PFMA conviction to deny firearm privileges Judge Strine had no legal basis before him *at the time of the plea* to inform Mr. DeFrance that federal law imposed a lifetime firearms ban. What Judge Strine's opinion is now is both uninformed and irrelevant.

Consistent with Judge Strine's lack of information to render informed advice concerning federal firearms law, the NICS Examiners likewise did not declare Mr. DeFrance a prohibited person until September of 2021, after having "proceeded" Mr. DeFrance on at least two (2) and perhaps as many as five (5) 4473 Form transactions. Consider it this way: since the judicial records say "may" the contingent nature of that admonition was completely superseded by five (5) subsequent NICS determinations that Mr. DeFrance was not a prohibited person because the Federal government clarified Mr. DeFrance's status for him.

Insofar as ECF No. 72-3 is concerned more complete background is necessary. In June of 2018, Mr. DeFrance visited with Detective Baker and others from the Missoula Police Department about Jermain Charlo. At the end of the visit

3

Mr. DeFrance consented to a search of his truck and the police found firearms, including those at issue in this case. Those firearms were left in the truck either because the Police were unaware of Mr. DeFrance's PFMA or for some other unknown reason. In September of 2018, Detective Baker obtained a search warrant for Mr. DeFrance's residence. At ¶26 of the search warrant application (which is Sensitive Material) Detective Baker states that after consulting the Montana Analysis and Technical Information Center (MATIC) it was determined that Mr. DeFrance was a prohibited person due to his Montana PFMA.

Accordingly, when the search warrant was served at Mr. DeFrance's residence the Police took pains to ensure that a belt recorder was running when Mr. DeFrance was intentionally confronted about his knowledge of his firearms rights. However, the statement is of no help to the government. At best it is a fractured exchange where Mr. DeFrance states both yes and no, seemingly wanting to offer further explanation to the question by interjecting the word "but". Tellingly right around the time of this "statement" Mr. DeFrance had recently been "proceeded" as eligible to possess a firearm by a NICS check at the pawn shop. (ECF No. 72, p. 9, item 5).

*2. The government misunderstands the nature of the* Brady *claim and its relationship to Mr. DeFrance's procedural due process and collateral estoppel claims.*

Mr. DeFrance never claimed that the government suppressed the 4473 Forms (ECF No. 72 at p. 2). His complaint is that he noticed up his defenses and supplied the 4473 Forms to the government on September 1, 2021 (ECF Nos. 27-28); and as briefing progressed regarding whether the noticed defenses are appropriate the government came into possession of all of the NICS Examiner documents in the record now as ECF No. 63. Moreover, those documents were disclosed to the government on September 16, 2021, which is evident just by looking at the emails that went back and forth between government counsel and the NICS Examiners. (*Again, see* ECF No. 63).

Yet the government did not disclose even the existence of those papers (ECF No. 63) until November 19, 2021, which was a full two months after the government received them; and during a period the parties were briefing both Mr. DeFrance's right to raise affirmative defenses (ECF No. 27); and whether Mr. DeFrance had adequate notice that he acted in violation of the law (ECF No. 55). In fact briefing on each of those critical subjects (affirmative defenses and adequate notice) closed before the government disclosed the NICS Examiner documents now in the record as ECF No. 63. (*See* Exhibit A, attached hereto).

Thus, the important takeaway here is that the government's failure to disclose the NICS Examiner documents until after all of Mr. DeFrance's opportunity for pretrial briefing had closed represents a serious *Brady* violation in its own right regardless of the government's belated disclosure of the NICS Examiner documents on November 19, 2021.  Another way to put this is that there is absolutely no question that had the NICS Examiner documents (ECF No. 63) been disclosed within a reasonable time of the government having received them the content of those papers would have been woven into both Mr. DeFrance's briefing on his right to assert affirmative defenses and his lack of notice challenge.  *Cf. United States v. Lewis*, 368 F.3d 1102, 1106 (9th Cir. 2004) (fair warning claim inextricably intertwined with question of alleged guilt).  L. R. C. R. 16.1 and 16.5 make it abundantly clear that the government has a continuing duty to "promptly" disclose exculpatory information.  Furthermore, under the Due Process Protection Act (DPPA) the spirit of the *Brady* rule has been given new life and here the government was admonished on three (3) occasions (August 2, 2021; September 21, 2021; and November 18, 2021) under the DPPA to promptly furnish exculpatory material.

In addition, there is the specter of Mr. DeFrance trying to figure out whether to plead guilty and/or enter into a plea agreement.  The government formally offered a written plea agreement on August 6, 2021.  And although Mr. DeFrance initially rejected the offer it has remained open for Mr. DeFrance to accept.  The important

point is that at the time the offer was made Mr. DeFrance had no knowledge of the exculpatory nature of the NICS Examiner documents in ECF No. 63. Relevant here is a 2002 decision of the Supreme Court where it held that prior to the entry of a guilty plea the government has no obligation to disclose impeachment evidence. *United States v. Ruiz*, 536 U.S. 622 (2002).

However, *Ruiz* does not address the government's obligation to disclose non-impeachment, exculpatory evidence during plea negotiations or before entry of a guilty plea. *McCann v. Mangialardi*, 337 F.3d 782, 787 (7th Cir. 2003). Given that the government's plea offer remained open the critical facts here are that by September 16, 2021, the government had the NICS Examiner documents, but instead of disclosing them upon receipt the government both withheld this exculpatory evidence for more than two months and in the meanwhile urged Mr. DeFrance to plead guilty or suffer additional charges. A threat the government made good on, without disclosing the NICS Examiner documents.

Had the defense known about the NICS Examiner documents (ECF No. 63) in a timely fashion (*i.e.*, *before* he was indicted for additional charges) Mr. DeFrance could have at least thoughtfully considered other strategies of defense. Again, the Court must remain mindful that between September 16th and disclosure of the NICS Examiner documents on November 19th the government was urging Mr. DeFrance

to plead guilty. So here two additional strategies come to mind, assuming that the NICS Examiner documents had been disclosed.

First, knowing that the government was considering additional charges defense counsel could have lobbied the government to include all of the background contained in ECF No. 63 in its grand jury presentation. *See e.g., United States Attorney's Manual*, §9-11-233, attached hereto as Exhibit B, p. 1. And even assuming the government resistance to this idea of presenting the NICS documents to the grand jury, Mr. DeFrance could have considered the alternate strategy of requesting the opportunity to testify before the grand jury himself. *See e.g.*, *United States Attorney's Manual* §9-11-152, attached hereto as Exhibit B, p. 2.

The NICS Examiner documents are exculpatory, not impeachment. First, the documents clearly show at a minimum that at least on two of the five occasions that Mr. DeFrance processed the 4473 Forms at the pawn shop the government ruled him eligible to possess a firearm. And second, that it is also possible that Mr. DeFrance was indeed "proceeded" on all five occasions. A point we will never know due to retention rules that the government tries to hide behind in its response. (ECF No. 72 at p. 13). And here it is important to bear in mind that according to the Supreme Court in *Abramski v. United States*, 573 U.S. 169, 188 (2014), the purpose of the 4473 Form is to ascertain the purchaser's true identity and "eligibility for gun ownership".

Furthermore, these issues are illuminated by the Ninth Circuit's recent decision in *United States v. Door*, 996 F.3d 606 (9th Cir. 2021). In *Door* the defendant argued that *Rehaif v. United States*, 139 S. Ct. 2191 (2019) not only required the government to prove that defendant knew his status as a felon for the §922(g) charge; but further that defendant had to know his status as a felon who had been convicted of a crime of violence on the possession of body armor charge as well. The government contended on the other hand that while it was obliged to prove defendant knew his felon status, there was no obligation for the government to prove that Mr. Door knew he was a felon convicted of a crime of violence. The *Door* Panel rebuffed the government's assertion and explained. *See Door*, 996 F.3d at 614-615.

It is the same situation here because like in *Door* 18 USC §924(a)(2) expressly states "[w]hoever knowingly violates subsection [922](a)(6) . . . [and] [922](g)". Thus, in a §922(a)(6) case the defendant must knowingly make a false statement; and the materiality of that statement (*i.e.*, what makes the statement false) is the defendant's alleged status as a domestic violence misdemeanant as described in §922(g)(9). Consider it this way: walking into a sporting goods store and telling the clerk at the firearms counter that you are not a convicted felon is not a crime. What makes it a crime is if that statement is knowingly false and is made in connection with the intent to acquire a firearm. Something that is material to the lawfulness of the sale. These are all elements identified in the statutes applicable in this case

9

(§922(a)(6) and §924(a)(2)). Put a little differently, the false statement is not false unless the defendant knows his status (*i.e.*, a §922(g)(9) convicted domestic violence misdemeanant) and the false statement is made with the intent to acquire a gun, in this case the alleged transactions at the pawn shop.

At the very least, as required by *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991), the government should have approached this Court *ex parte* as to their obligation to disclose the NICS Examiner documents. In other words, in view of the powerful nature of evidence being withheld, the government should, at the very least, have "promptly" submitted the information to this Court for in-camera review if it was uncertain about the materiality of the information. *See Henthorn*, 931 F.2d at 30-31. Moreover, the government's citation to *United States v. Hullette*, 525 F.3d 610 (8th Cir. 2008) is unavailing. (ECF No. 73, pp. 4 and 19). In that case the Court makes a broad and conclusory ruling that reliance on the NICS process cannot be a defense.

First, the *Hullette* holding is completely bereft of discussion of the NICS process. And it contradicts the Supreme Court's perception of the NICS process as one designed to ascertain an individual's "eligibility for gun ownership". *Abramski*, *supra*, 573 U.S. at 188. In addition, *Hullette* predates *Rehaif v. United States*, 139 S. Ct. 2191 (2019) by almost eleven (11) years. *Rehaif* holds that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the

defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Id*. at 2200. As Justice Breyer noted:

> Assuming compliance with ordinary licensing requirements, the possession of a gun can be entirely innocent. It is therefore the defendant's status, and not his conduct alone, that makes the difference. Without knowledge of status, the defendant may well lack the intent needed to make his behavior wrongful.

*Id*. at 2197.

Also, the Court should consider the government's footnote 1 in its brief which in full states:

> NICS is the National Instant Criminal Background Check System established by the Brady Handgun Violence Prevention Act of 1993. It is operated by the FBI and is used by gun retailers and pawn shops to determine whether a person can legally buy or own a firearm. https://www.fbi.gov/services/cjis/nics/about-nics. For a discussion on the NICS process and potential pitfalls relating to NICS' access to information, *see, e.g. Sanders v. United States*, 937 f.3d (*sic*) 316 (4th Cir. 2019).

(ECF No. 72, p. 2).

Careful consideration of the *Sanders* decision set forth in the above footnote strongly suggests that, at least in the civil context, failures in the NICS system can result in government liability. If a civil plaintiff has a right to rely on the NICS system in order to sue when the system fails due to government error a criminal defendant in a similar situation ought not be denied that same right of reliance. In

both situations the civil plaintiff and the criminal defendant exercise the same reliance interest.  The expectation that those eligible to possess firearms will be distinguished from those who are not.  By way of analogy, the government cannot provide the defendant/informant the cocaine to sell in the course of a drug deal and then turn around and prosecute the informant for possessing/selling it.

Given the substantial issues that Mr. DeFrance's *Brady* claim generates the Court should order the government to produce the grand jury transcript supporting the second superseding indictment for *in-camera* review, to determine whether the NICS Examiner assessments and underlying narrative were put before the grand jury.  *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400-401 (burden on the defense to show "a particularized need" for grand jury transcript which outweighs the policy of secrecy).

The procedural due process afforded Mr. DeFrance in this case is abysmal. For example, after the NICS Examiners belatedly concluded that Mr. DeFrance is a prohibited person one of the Examiners (Feurestein) indicated that the usual procedure would be to send letters to Mr. DeFrance and his lawyer because all of Mr. DeFrance's 4473 Forms should have been denied, since the government mistakenly ruled Mr. DeFrance <u>not</u> to be a prohibited person[1].  However, in the usual

---

[1] The accuracy of this is only conceded for discussion not admitted for truth or accuracy.

course those "denied" the right to acquire a gun as a result of the 4473 Form process have a standing right to appeal that determination administratively. Here, however, the government leapfrogs over that administrative right by branding Mr. DeFrance a liar in three (3) additional counts.

In closing we invite the Court to consider the following cases in Exhibit C attached hereto which arose in the District of Montana involving firearms offenses that were ultimately dismissed on the government's motion.

The obvious question here is why this case continues while the cases in Exhibit C have been dismissed?

3. *Reply to the government's Vindictiveness arugment.*

The government's argument under *United States v. Kent*, 649 F.3d 906 (9th Cir. 2011) is not persuasive (ECF No. 72 at p. 19). While it is true that *Kent* holds that prosecutors have wider latitude to threaten additional charges in the pretrial/plea agreement stages (*see* 649 F.3d at 413). That rule only applies where the prosecutor is trying to exact a plea for some permissible reason. What compromises the government's effort to fit into that profile here is because of systemic failures in government processes (the suppressed NICS Examiner documents) and ineffective investigation. The government had no idea about Mr. DeFrance's processing of the 4473 Forms at the pawn shop. Plus, after the defense disclosed those documents (the 4473 Forms), under the heading of affirmative defenses (ECF Nos. 27 and 28);

13

the government requested and ultimately received a current NICS analysis on September 16, 2021, which concludes that Mr. DeFrance successfully transacted in firearms at the pawn shop on five (5) previous occasions. Yet, while still urging Mr. DeFrance to plead guilty the government threatened additional charges and when Mr. DeFrance refused to comply those new charges were brought.

While urging Mr. DeFrance to plead guilty or suffer additional charges, the government actively suppressed the NICS Examiner documents and only disclosed them *after* the new charges had been brought. Yes, "[d]epartures from the initial indictment do not raise presumptions of vindictiveness . . ." *United States v. Gallegos-Curiel*, 681 F.2d 1164, 1170 (9th Cir. 1982). But this rule is qualified by the phrase "except in a rare case". This is just such a rare case.

The government's argument that the second superseding indictment has not increased the severity of charges for Mr. DeFrance is without merit (ECF No. 72, pp. 25-26). Why bring those additional false statement charges would be the rhetorical reply. The additional false statement charges only make the straight line between Mr. DeFrance's assertion of affirmative defenses and the new charges even clearer. Under the second superseding indictment the government can qualify for a jury instruction that Mr. DeFrance lied on the 4473 Forms, a direct hit on the affirmative defenses, that Mr. DeFrance was attempting to develop. This situation more resembles *United States v. Motley*, 655 F.2d 186 (9th Cir. 1982) (defendant

who jumpstarts presumption of vindictiveness can qualify for dismissal of entire superseding indictment). Moreover, considering the *Brady* violation we have argued this dismissal should be with prejudice.

## CONCLUSION

WHEREFORE, this Court should hold a hearing, order the grand jury transcript, and the second superseding indictment ought to be dismissed.

RESPECTFULLY SUBMITTED this 10th day of January, 2022.

/s/ Michael Donahoe
MICHAEL DONAHOE
Deputy Federal Defender
Counsel for Defendant

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Reply Brief is in compliance with Local Rule 7.1(d)(2) (as amended). The brief's line spacing is double-spaced, and is proportionately spaced, with a 14-point font size and contains less than 3,250 words. (Total number of words: 3,232 excluding tables and certificates).

RESPECTFULLY SUBMITTED this 10th day of January, 2022.

/s/ Michael Donahoe
MICHAEL DONAHOE
Deputy Federal Defender
Counsel for Defendant

## CERTIFICATE OF SERVICE
## L.R. 5.2(b)

I hereby certify that on January 10, 2022, a copy of the foregoing document was served on the following persons by the following means:

<u>  1  </u>   CM-ECF

<u>  2  </u>   Mail

1. CLERK, UNITED STATES DISTRICT COURT

1. JENNIFER S. CLARK
   Assistant United States Attorney
   United States Attorney's Office
   105 E. Pine, 2nd Floor
   P.O. Box 8329
   Missoula, MT  59807
       Counsel for the United States of America

2. MICHAEL BLAKE DeFRANCE
       Defendant

<u>/s/ Michael Donahoe</u>
FEDERAL DEFENDERS OF MONTANA

17