**JENNIFER S. CLARK**
**Assistant U.S. Attorney**
**P.O. Box 8329**
**Missoula, MT 59807**
**105 E. Pine, 2nd Floor**
**Missoula, MT   59802**
**Phone: (406) 542-8851**
**FAX: (406) 542-1476**
**E-mail: Jennifer.Clark2@usdoj.gov**

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br><br> Plaintiff, <br><br> vs. <br><br> **MICHAEL BLAKE DEFRANCE,** <br><br> Defendant. | **CR 21-29-M-DLC** <br><br> **UNITED STATES' SUR-REPLY TO DEFENDANT'S THIRD MOTION TO DISMISS** |

Comes now, Jennifer S. Clark, and files a sur-reply to Defendant's reply.

///

///

///

///

1

I. **DeFrance's Reply Fails to Add Support to his Claim that the United States Suppressed Exculpatory Evidence resulting in prejudice.**

    **A. DeFrance has not shown that the disclosed documents contain any exculpatory information not available to the defense.**

DeFrance's reply once again fails at the first step of the *Brady* inquiry by failing to identify any exculpatory or impeaching information that was suppressed by the United States.[1] The only specific argument DeFrance makes in his reply with respect to the exculpatory value of the information at issue appears to be that it discloses the fact that at least two, and perhaps the other three, transactions were given a "proceed" designation by NICS. Doc. 74 at 8. It is undisputed, however, that this precise information was included in the original 4473 documents, which DeFrance acknowledges were not suppressed. Doc. 74 at 5 ("Mr. DeFrance never claimed that the government suppressed the 4473 Forms."). The disclosed documents provided no new information in that respect.

More broadly, DeFrance's arguments labor under a fundamental misunderstanding. He refers generally to the disclosure of "NICS Examiner

---

[1] As noted in the United States' response brief, the proper standard for NICS information purged pursuant to federal regulations is not failure to disclose exculpatory evidence under *Brady*, but failure to preserve potentially exculpatory evidence under *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988). *See* Doc. 72 at 14-15. DeFrance fails to address that issue or explain how the United States' compliance with federal regulations implemented to protect gunowner privacy could be in bad faith.

documents," apparently referring to the emails from Dana Pickles (Doc. 63 at 1-3, Doc. 69-2 at 1-3), and Stephen Feuerstein's email and attachments (Doc. 63 at 1, 27-31).[2] Pickles, however, is a program analyst for the ATF and Feuerstein is an investigative analyst, also at ATF. The National Instant Criminal Background Check System (NICS) is operated by the FBI.[3] *See* Doc. 72 at 2, n.1 (acknowledging that NICS is operated by the FBI). There were no "NICS Examiner documents" in the disclosures. Indeed, the purpose of the United States' disclosure of this information was simply to show that no additional NICS materials relating to DeFrance's transactions exist pursuant to federal privacy regulations. The documents were not exculpatory and provided out of completeness in relation to the new charges.

As the emails themselves explain, the ATF does not process NICS checks, but only receives transactions that are denied through the NICS process. See Doc. 63 at 2. That DeFrance had not been denied a firearm during a NICS check was

---

[2] The other documents included in documents 63 are copies of the 4473 documents provided by DeFrance. Doc. 63 at 5-26. Document 69-2, pages 4-7, contain a forward of the email correspondence of Doc. 63, 1-3.

[3] Importantly, the United States made a typographical error in footnote 4 of its response brief, Doc. 72 at 9, n.4. The footnote was meant to make clear that *neither* Feuerstein *nor* Pickles were agents on this case or expected to testify at trial. DeFrance, perhaps correctly interpreting the footnote, has made clear that his contention is not that his claims are premised on "impeachment" value of these individuals. Doc. 74 at 8 ("The NICS Examiner documents are exculpatory, not impeachment.").

information he already had.[4] The emails merely confirm the information regarding the DeFrance's NICS transactions included in the forms he provided and the publicly available regulations. Comments made in emails by the ATF analysts in September of 2021 are not relevant to NICS checks performed by the FBI years earlier.

The email in Document 63 is Pickles' summary of information from the 4473 forms themselves and confirming the absence of any ATF record for denials, consistent with the federal regulations governing the purging of NICS information. Doc. 63 at 2-3. Nothing in Pickles' email contains any exculpatory information not provided in the 4473 forms or the relevant regulations.[5] The chart below provides a side-by-side comparison of the information contained in the 4473s provided by DeFrance and in the retention regulations with the information contained in the disclosed emails.

---

[4] As previously argued, the government maintains that the fact that the transactions were not denied is not admissible at trial as substantive evidence that DeFrance was not prohibited.

[5] Nor is there anything exculpatory in the statement that "As the FFL is allowed to transfer the firearm(s) after 3 business days all the transfers were done legally." Doc. 63 at 3. As the context makes clear, Pickles was referring to the legality of the Federal Firearms Licensee (FFL) transferring the firearms, not analyzing DeFrance's prohibited status or false statements on the forms. He merely confirmed that the transactions did not proceed following a denial. Moreover, as noted in the United States' response, the post hoc opinion of an ATF analyst is irrelevant to the jury questions of whether DeFrance was in fact prohibited or had knowledge of his prohibited status.

| Information on 4473s provided by defendant | Information contained in emails | Records retention regulation 28 CFR § 25.9 |
|---|---|---|
| NTN 2TLN6WG<br>Delayed<br>No resolution from NICS; can transfer 2/10/15; gun transferred 2/10/15<br>*Doc. 63 at 7-9* | NTN 2TLN6WG<br>Delayed<br>Not denied – either proceed or left delayed purged per law<br>*Doc. 63 at 2* | Delayed: identifying info provided by transferee destroyed within 90 days<br>*28 CFR § 25.9(b)(1)(ii)* |
| NTN 10015ZV34<br>Delayed<br>No resolution from NICS; can transfer 9/28/16; gun transferred 10/3/16<br>*Doc. 63 at 11-13* | NTN 10015ZV34<br>Delayed<br>Not denied either proceed or left delayed purged per law<br>*Doc. 63 at 2* | Delayed: identifying info provided by transferee destroyed within 90 days<br>*28 CFR § 25.9(b)(1)(ii)* |
| NTN 100JMSSST<br>Delayed<br>Proceed response from NICS 3/1/18<br>Gun transferred 3/2/18<br>*Doc. 63 at 15-18* | NTN 100JMSSST<br>Delayed<br>Proceeded<br>purged per law<br>*Doc. 63 at 2* | Proceed: identifying info provided by transferee destroyed within 24 hours<br>*28 CFR § 25.9(b)(1)(iii)* |
| NTN 100JW6NZT<br>Delayed<br>No response from NICS; can transfer 3/8/18; gun transferred 3/10/18<br>*Doc. 63 at 20-21* | NTN 100JW6NZT<br>Delayed<br>Not denied either proceed or left delayed purged per law<br>*Doc. 63 at 2* | Delayed: identifying info provided by transferee destroyed within 90 days<br>*28 CFR § 25.9(b)(1)(ii)* |
| NTN 100PYP1ZR<br>Delayed<br>Proceed response from NICS 8/30/18<br>Gun transferred 9/1/18<br>*Doc. 63 at 23-26* | NTN 100PYP1ZR<br>Delayed<br>Proceeded<br>purged per law<br>*Doc. 63 at 2* | Proceed: identifying info provided by transferee destroyed within 24 hours<br>*28 CFR § 25.9(b)(1)(iii)* |

Nor is there any exculpatory or impeaching information in the Pickles' emails in Document 69-2, which merely contain answers to questions regarding the general

process regarding NICS process.   Doc 69-2 at 1-3.   The additional emails contain no information regarding any of DeFrance's firearms transactions.[6]

Similarly, the email and attachments from ATF Analyst Feuerstein (Doc. 63 at 1, 27-31) contain no new exculpatory information.   Again, the ATF employee's after-the-fact opinions regarding DeFrance's status would not be relevant to the question of whether he was prohibited, nor relevant to his knowledge or his estoppel defense.   They also do not constitute a belated conclusion by a NICS examiner that DeFrance was prohibited.

### B. DeFrance has not demonstrated any prejudice by what he contends was the untimely disclosure of the emails from ATF.

DeFrance cannot show that any information was "suppressed" or that he was in any way prejudiced.   DeFrance's claim that he could have "woven" the contents of the document into his briefing (Doc. 74 at 6) adds no support to his assertion of prejudicial suppression.

First, as noted above, the information DeFrance asserts the government withheld has always been in the defendant's possession or available to the defendant.   He was present at his change of plea and sentencing.   He provided

---

[6] DeFrance's opening brief takes issue with Pickles' paraphrase of the prohibited status definition in the course of an example emphasizing an unrelated point, Doc. 70 at 7 (citing Doc. 69 at 1) but fails to explain how, even if inaccurate, the comment by an ATF agent in 2021 (after the transactions at issue and never represented to DeFrance) would relate to any element of the charges or the prior FBI NICS check.

his identifying information to NICS on his 4473. He acquired the 4473 forms from Cash 1 Pawn. The NICS determinations are memorialized on the 4473. His Sanders County Court records are maintained in Sanders County. The federal privacy regulations are publicly available.

Second, DeFrance has yet to establish that any delay in disclosure resulted in any prejudice. DeFrance argues that the information was relevant to DeFrance's then-pending motions to dismiss. However, the Court has resolved those motions on legal grounds unaffected by this information. Doc. 71. In particular, the Court held that the relationship question was one for jury to decide, so to the extent there is any admissible, exculpatory evidence in these documents relevant to that issue, he is free to use it at trial. Likewise, his failure to state a claim motion, which he appears to refer to as his "adequate notice" argument, Doc. 74 at 5, was similarly denied on unrelated grounds.[7]

Additionally, after he received these documents, DeFrance moved the Court for leave to file additional motions. He was granted leave on November 22, 2021. Doc. 64. He had 28 days to raise any issues, yet he only filed a motion to

---

[7] Similarly, DeFrance argues the information was relevant to a claim, equating a claim under 18 U.S.C. § 922(a)(6) to the issue raised in *United States v. Door*, 996 F.3d 606 (9th Cir. 2021). It is not clear why he would be unable to make such an argument due to the timing of the disclosure, but in any event, the argument is identical to that raised by DeFrance's counsel in *United States v. Meech*, 2022 WL 136823 (D. Mont. January 14, 2022) (unpublished), where it was rejected.

dismiss. He had, and continues to have, leave to file additional motions. Doc. 76. He was also given an opportunity for supplemental briefing with respect to the government's motions in limine. To the extent that DeFrance is able to use this information to "at least thoughtfully consider other strategies of defense," Doc. 74 at 7, those strategies, such as they are, are still available to him.

Finally, both DeFrance's claim that the lack of information impeded his opportunity to consider a guilty plea or to take whatever steps he believes were open to him with respect to the grand jury, fail for the same reasons as above. He was aware of the same information regarding the NICS process that he has now—that two of his firearms transactions had been reviewed as a proceed and the remaining transactions were not denied. If that information was sufficient to alter DeFrance's stance with respect to the plea or to "lobby the government" or request the opportunity to testify before the grand jury, see Doc. 74 at 8, it was available to him and he did not act on it. He has not explained how any of the information in the September 2021 ATF emails would have made any difference sufficient to show prejudice.

DeFrance's claim that the Court should review the grand jury transcript to determine if the "NICS Examiner assessments" and "the underlying narrative" were put before the grand jury is not supported by law. *See United States v. Williams*, 112 S. Ct. 1735(1992) (Federal courts' supervisory powers over grand

jury do not include dismissal of a valid indictment for failure of prosecutor to include substantial exculpatory evidence).[8] DeFrance acknowledges that he has the burden to show "a particularized need" for grand jury transcripts to be disclosed. Doc. 74 at 12. The Court should not accept his invitation to engage in a fishing expedition to search for grand jury wrongdoing when there are no grounds to believe that any wrongdoing or abuse occurred. *See United States v. Rodriguez-Torres*, 570 F.Supp.2d 237, 242 (D. Puerto Rico 2008). DeFrance has not offered anything to suggest misconduct occurred. *United States v. DeTar*, 832 F.2d 1110, 1113 (9th Cir. 1987) (assertion that defendant doesn't know if misconduct occurred is insufficient); *United States v. Reed,* 147 F.3d 1178, 1179 (9th Cir. 1998) (A defendant's need must be based on more than mere speculation). He has failed to establish that the ATF emails are exculpatory as they relate to the charges in the Second Superseding Indictment. While the information contained in the 4473s may establish an affirmative defense for DeFrance, they do not clearly exculpate his conduct. And even if DeFrance could establish the emails were

---

[8] DOJ policy requires a prosecutor personally aware of substantial evidence that directly negates the guilt of a subject to present or otherwise disclose such evidence to the grand jury. See Justice Manual § 9-11.233. The prosecutor is not required to present affirmative defenses. *See, e.g., United States v. Wilcher,* 2021 WL 4394585, *7 (C.D. Ill. 2021) (affirmative defense of entrapment is irrelevant to the grand jury's consideration of probable cause).

exculpatory, they do not provide a legal basis for this Court to grant a dismissal of the indictment.

### C. DeFrance's evidentiary arguments are irrelevant to his motions and incorrect.

DeFrance's arguments related to the United States' evidence bear no relevance to the issues the Court needs to decide. They are also not an accurate application of the law.

The Parol evidence rule has no application in criminal cases. *See, e.g.*, *United States v. Kreimer*, 609 F.2d 126, 133 (5th Cir. 1980) (parol evidence rule applies to parties to a contract and does not apply in criminal cases); *United States v. Perry*, 537 Fed.Appx. 347 (5th Cir. 2013) (parol evidence does not apply where a controversy is between the government and a party to a contract in fraud prosecution). DeFrance's prior sentence and related documents (1) establish under which subsection of partner/family member assault DeFrance was convicted, and (2) it rebut any claim he didn't have knowledge that his conviction may be prohibiting.

Likewise, Judge Strine's statement regarding his "potential consequence" "loss of firearms rights" is a fact to be presented to the jury to consider in conjunction with the "lying and buying" charge. The jury must decide if DeFrance knew his status was "convicted of a misdemeanor crime of domestic violence." What he was told is a fact for them to assess. Judge Strine will not

testify that DeFrance is a prohibited person under 922(g)(9) as that invades the province of the jury. However, he will provide factual details to assist the jury in making their decision.

### II. DeFrance's Reply Fails to Add Support to his Claim that the United States was Vindictive in Seeking a Second Superseding Indictment.

DeFrance provides no additional evidence to support a dismissal for vindictive prosecution. His reliance on *United States v. Motley*, 655 F.2d 186 (9th Cir. 1982) is misplaced because there the government filed additional charges *after* a mistrial. *Id*. at 190. The courts have consistently reviewed pre-trial charging decisions differently than post-trial. *See, e.g., United States v. Gallegos-Curiel*, 681 F.2d 1164, 1170 (9th Cir. 1982); *United States v. Goodwin*, 457 U.S. 368, 381 (1982); *United States v. Edmonson*, 792 F.2d 1492 (9th Cir. 1986).

### CONCLUSION

For the foregoing reasons, the Court should deny DeFrance's motion to dismiss Second Superseding Indictment.

DATED this 18th day of January, 2022.

                                              LEIF M. JOHNSON
                                            United States Attorney

                                            */s/ Jennifer S. Clark*
                                            Assistant U.S. Attorney
                                            Attorney for Plaintiff

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule, this certifies that the body of the attached response contains 1,998 words, excluding the caption and certificate of compliance.

                                                LEIF M. JOHNSON
                                                United States Attorney

                                                */s/ Jennifer S. Clark*
                                                Assistant U.S. Attorney
                                                Attorney for Plaintiff