MICHAEL DONAHOE
Deputy Federal Defender
Federal Defenders of Montana
Helena Branch Office
50 West 14th Street, Suite 1
Helena, Montana 59601
Phone: (406) 449-8381
Fax: (406) 449-5651
Email:  michael_donahoe@fd.org
Attorneys for Defendant

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL BLAKE DeFRANCE,<br><br>Defendant. | CR 21-29-M-DLC<br><br>**DEFENDANT DeFRANCE'S OPTIONAL SUPPLEMENTAL BRIEF** |

## INTRODUCTION

In its most recent order (ECF No. 76, p. 2) the Court grants Mr. DeFrance the opportunity to supplement his previous response to the government's still pending motion to preclude defenses.  (*See* ECF Nos. 36, 37, and 45).  This brief intends to take advantage of that opportunity and also to discuss how the briefing on Mr. DeFrance's vagueness argument would have changed (ECF Nos. 43, 44, 50 and 53).

1

**(1) *Timing***

Recognizing that from previous papers the Court is no doubt familiar with the facts (*see* ECF Nos. 36, 37, and 45). We begin here with the general subject of timing and more specifically when things happened in relation to one another.

The original indictment was unsealed and filed on July 28, 2021 (ECF No. 2). And partly in response to an early pretrial motion the government brought a superseding indictment and unsealed it on August 26, 2021 (ECF No. 26). Six days later on September 1, 2021, Mr. DeFrance filed his notice of defenses (ECF Nos. 27 and 28). On September 3, 2021, the government moved *in limine* to preclude the defenses notice in ECF Nos. 27 and 28 (*see* ECF Nos. 36 and 37). On September 17, 2021, Mr. DeFrance responded to the government's motion *in limine* seeking to preclude defenses (ECF No. 45).

Here it is important to stress that in conjunction with ECF No. 45 Mr. DeFrance also filed ECF No. 46, which was Mr. DeFrance's good faith effort to comply with the Notice requirements of Rule 12.3(4)(B), Fed. R. Crim. P. Equally important is the fact that Mr. DeFrance's effort to satisfy Rule 12.3(4)(B) was at the government's request. (*See* ECF No. 36, p. 2). However, the day before Mr. DeFrance filed his attempt to comply with Rule 12.3(4)(B) the government received all of the discovery that is now in the record as ECF No. 63. The critical point is that in that discovery there are government employees who opine that Mr. DeFrance

2

was arguably "proceeded" and cleared to possess firearms on as many as five (5) ATF 4473 Form transactions at the very pawn shop that Mr. DeFrance disclosed in both his notice of defenses (ECF No. 27) and his Rule 12.3(4)(B) response (ECF No. 45). Yet the government failed to disclose that discovery until a full two months *after* Mr. DeFrance filed his Rule 12.3(4)(B) response on September 17, 2021. And importantly on September 21, 2021, four (4) days after he filed his Rule 12.3(4)(B) response, Mr. DeFrance was arraigned on his first superseding indictment (ECF No. 47). In connection with that arraignment the government was *again* reminded of its *Brady* obligations (ECF No. 48). Meanwhile the government set about reorganizing the charges against Mr. DeFrance.

In a second superseding indictment filed on October 21, 2021 the government altered the original count (I) in the indictment by inserting a new commencement date for the alleged offense of possessing a firearm having been previously convicted for Montana Partner Family Member Assault (PFMA). Moreover, it appears uncontroverted that this newly reformulated commencement date of October 3, 2016 in the second superseding indictment is lifted directly from the NICS documents now in the record as ECF No. 28 (on page 7). Furthermore, the government added three (3) new counts under the second superseding indictment alleging three (3) false statement charges, which are clearly based on the 4473 Forms that the defense disclosed. (*See* ECF No. 28, pp. 10-22).

The calculated nature of the government's effort to put together the second superseding indictment is most apparent considering that while we gave notice and copies of all five (5) of the relevant 4473 Forms to the government in September 2021 only three (3) of the five (5) 4473 Forms result in §922(a)(6) allegations in the second superseding indictment.  This is because by the time the second superseding indictment was filed on October 21, 2021, the statute of limitations had expired on the first two (2) 4473 Forms.  Not to be deterred however the government uses the second 4473 we provided (which is dated October 3, 2021) as the new commencement date for the possession count, that is, Count I; even though any §922(a)(6) charge on that 4473 has been out of time since at least October 4, 2021. (*See* 18 USC §3282 setting forth five (5) year limitation period).

### *(2) The NICS Examiner Documents (ECF No. 63) were clearly Independently Relevant To The Government's Motion to Preclude Defenses And The Delay In Disclosing Them Was Prejudicial.*

Most, if not all, of the argument in the government's motion *in limine* to preclude defenses (ECF No. 36) is contradicted by the NICS Examiner documents (ECF No. 63).  Like all attorneys, prosecutors owe a duty of candor to the Court and an obligation to ensure that the defendant has a fair and impartial trial.  *Campbell v. Rice*, 408 F.3d 1166, 1173 (8th Cir. 2005).  Yet here while briefing was still open on its motion to preclude defenses the government discovered for itself that ATF personnel actually deemed Mr. DeFrance to not be a prohibited person.  Perhaps on

as many as five (5) occasions. However, instead of disclosing the information promptly to defense counsel (and/or correcting the arguments set forth in its motion) (ECF Nos. 36 and 37) the prosecutor waited a full two months to make disclosure. Furthermore, the government decided to use the undisclosed information to reorganize the first superseding indictment as recounted above by amending Count I of the indictment to correspond to one of the 4473 Forms that is outside the statute of limitations.

      This action by the government was calculated not coincidence. Consider that if the government had promptly either disclosed the NICS Examiner documents to defense counsel and/or corrected its motion to reflect the true facts Mr. DeFrance's assertion of defenses would have gained significant traction. For example, on prompt disclosure Mr. DeFrance would have been in a position to add actual government employees to his Rule 12.3(4)(B) response (ECF No. 46) in a timely manner in accordance with the Rule. However, the more sinister aspect of the government's conduct here is that within the two-month period that the government suppressed the NICS Examiner documents the prosecution organizes yet a third indictment, that not only adds three (3) new false statement charges; but also alleges a transactional connection for joinder purposes under Rule 8 Fed. R. Crim. P. between those new false statement charges and the original possession charge in Count I using a 4473 date that is beyond the statute of limitations.

Under Rule 8 the facts of the indictment must disclose a connection between counts alleged in an indictment in order for the counts to be considered properly joined. "Two offenses may be joined in the indictment under Rule 8(a) 'only if the offenses charged . . . are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.'" *United States v. Terry*, 911 F.2d 272, 276 (9th Cir. 1990) *citing United States v. Smith*, 795 F.2d 841, 850 (9th Cir. 1986). A transaction may include a series of related events and is interpreted flexibly. *Id*. Counts arise from related transactions when the commission of one offense leads to or depends upon another or when proof of one crime necessarily depends upon proof of another. *United States v. Jawara*, 474 F.3d 565, 573 (9th Cir. 2007).

To effect this result in the second superseding indictment the government changed the initial date of "possession" to October 3, 2016, which corresponds to the date reflected on the 4473 Form at page 7 of ECF No. 28. With this nexus established Mr. DeFrance's actual possession of any firearm becomes somewhat irrelevant because under this Court's rulings in *United States v. Meech* neither actual possession nor attempted possession of a firearm is an element or even a factor in the context of §922(a)(6) prosecution. *United States v. Meech*, 487 F. Supp. 3d 946

(Dist. MT 2020), *affirmed United States v. Meech*, 2022 WL 136823 (9th Cir. Jan. 14, 2022)[1].

Yet the head-scratcher here is that although the new commencement date in Count I of October 3, 2016 apparently comes from the second 4473 Form in ECF No. 28 (pages 6-9) nowhere does the indictment allege that that 4473 is false. Consequently what the government appears to want to prove at trial is that the false statement charges alleged in Counts II, III and IV serve to render the possession in Count I unlawful *after* Mr. DeFrance had answered the relevant question "no" and been proceeded on the transaction under the October 3, 2016, 4473 transaction. A transaction that is quite clearly outside the statute of limitations as a stand-alone §922(a)(6) charge.

Moreover, the first of the 4473 Forms we provided to the government in our notice of defenses was not included in the second superseding indictment as a false statement charge. Most likely because that transaction is likewise outside the five (5) year statute of limitations (*see* 18 USC §3282 and ECF No. 28, pp. 2-3). This may not seem significant but when this is considered in the wider context of Mr. DeFrance's noticed defenses it shows that only about two (2) years after the PFMA

---

[1] Mr. Meech has a petition for *en banc* rehearing in the preparation stage for filing in the Ninth Circuit and also intends to request a writ of certiorari from the Supreme Court, if necessary.

in 2013 Mr. DeFrance answered "no" to the relevant question and was able to proceed with a firearms transaction after a NICS check. In other words the transfer was legal, which the NICS Examiner documents clearly reflect. And then in the next succeeding 4473 transactions Mr. DeFrance was "proceeded" and likewise lawfully possessed a firearm after those 4473 transactions according to the NICS Examiner documents. We contend this is estoppel as a matter of law. Put a little differently the first two 4473 Forms (February 10, 2015 and October 3, 2016, ECF No.28, pp. 2-9) (which cannot be charged as false statements because they are beyond the statute of limitations), at a minimum, undermine any contention by the government that the later 2018 4473 Forms could serve to render Mr. DeFrance a prohibited person.

    Furthermore, in previous briefing Mr. DeFrance argued that any notice to him that he was a prohibited person was vague or incomplete due to the complexity of the categorical analysis, which must be conducted to determine whether the citizen has previously suffered a qualifying PFMA conviction sufficient to support a §922(g)(9) prosecution (ECF Nos. 43, 44, 50 and 53). In the order denying that motion the Court treated that argument as a facial challenge to the statute, which was fair because that is essentially the argument Mr. DeFrance advanced. However, when it comes to both speech and gun rights there is a second type of challenge that can be brought. *See e.g., Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir.

1998) (as-applied challenge contends that law is unconstitutional as applied to litigant's particular speech activity, even if law can be applied validly to others); *also see District of Columbia v. Heller*, 554 U.S. 570, 628 n.27 (when statute is challenged on Second Amendment grounds strict scrutiny or intermediate scrutiny may apply). And importantly even at the lower standard of intermediate scrutiny the government must show a "significant, substantial, or important" goal in enforcing the statute. *United States v. Chovan*, 735 F.3d 1127, 1139 (9th Cir. 2013). Likewise, there must be "a reasonable fit between the challenged regulation and the asserted objective". *Id*.

The point here is that had the suppressed discovery been promptly disclosed the defense challenges would have been different. Because not only do courts look at the First Amendment as a guide when determining what level of scrutiny to apply in a Second Amendment situation (735 F.3d at 1138); in addition we contend that the First Amendment cases which authorize as-applied challenges also cross over to the Second Amendment analysis as well. Thus we argue that the discovery which went undisclosed for two months would have given rise to broader challenges that Mr. DeFrance was denied the opportunity to make (*i.e.*, an as-applied challenge).

In *Brady,* the Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith

9

of the prosecution." 373 U.S., at 87, 83 S.Ct. 1194. The Court has since held that the duty to disclose such evidence is applicable, even if there has been no demand by the accused, *United States v. Agurs,* 427 U.S. 97, 107, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); and that this duty encompasses impeachment evidence as well as exculpatory evidence, *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Such evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.,* at 682, 105 S.Ct. 3375; *see also Kyles v. Whitley,* 514 U.S. 419, 433–434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). Furthermore, the *Brady* rule also embraces evidence "known only to police investigators and not to the prosecutor." *Id.,* at 438, 115 S.Ct. 1555. Therefore, in order to comply with *Brady* "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police." *Kyles,* 514 U.S., at 437, 115 S.Ct. 1555.

In addition this is not the only late discovery to surface in this case. On a different subject the parties have been engaged in a pitched battle centering on the "relationship" issue, which is a key federal element the government must prove at trial. Almost a full seven (7) weeks *after* the original indictment was brought the government disclosed a recorded police interview of the PFMA victim, Jermain Charlo. Because the recording is of such poor quality it took extra effort to find

10

someone to transcribe it. Having done that, a fair reading of Ms. Charlo's statements to the interviewing police officer give no indication that Ms. Charlo "resided" with Mr. DeFrance as a spouse. A copy of the transcript is filed herewith **under seal** for the Court's review. Which, again, would be totally consistent with Mr. DeFrance both answering "no" on the 4473 Forms and his statement to Detective Baker that he (Mr. DeFrance) was not clear that he was not allowed to possess firearms.

Lest it need be said this is a federal prosecution not a game of three-card monte. *Cf. United States v. Strickland*, 601 F.3d 963, 970 (9th Cir. 2010) (*en banc*) ("The modified categorical approach is not a judicial version of three-card monte"). Consider it this way: prompt disclosure of the evidence (discovery) under discussion would have increased Mr. DeFrance's opportunity to make different arguments and possibly prevail either on the pretrial theories he did advance, or on difference ones. And for sake of argument the Court should assume that this is correct. So now we posit, what would have happened if the court had dismissed Count I of the indictment(s) partly on the basis of "suppressed" discovery had it been disclosed "promptly"? In other words, the question is whether assuming had the government timely disclosed its discovery in accordance with the law, whether a discrete follow-up indictment for false statement charges could ever <u>not</u> be deemed vindictive.

///

///

11

## CONCLUSION

Under *United States v. Motley*, 655 F.2d 186 (9th Cir. 1981) the Court ought to dismiss the second superseding indictment.  By bringing it the government substituted a different charge for the one brought in the original indictment; and it added new charges which carry the potential for more severe penalties all in violation of Mr. DeFrance's due process rights.  Furthermore, due to the government's suppression of evidence under *Brady* and its ancestors dismissal should be with prejudice.  The current prosecution was and is a calculated effort by the government to deny Mr. DeFrance the right to defend himself on the original charge.  Which is a cherished, constitutional right enshrined in the Sixth Amendment to the United States Constitution.  *Holmes v. South Carolina*, 547 U.S. 319 (2006).

RESPECTFULLY SUBMITTED this 25th day of January, 2022.

/s/ Michael Donahoe
MICHAEL DONAHOE
Deputy Federal Defender
Counsel for Defendant

# CERTIFICATE OF SERVICE
## L.R. 5.2(b)

I hereby certify that on January 25, 2022, a copy of the foregoing document was served on the following persons by the following means:

  1     CM-ECF

  2     Mail

1. CLERK, UNITED STATES DISTRICT COURT

1. JENNIFER S. CLARK
   Assistant United States Attorney
   United States Attorney's Office
   105 E. Pine, 2nd Floor
   P.O. Box 8329
   Missoula, MT 59807
   Counsel for the United States of America

2. MICHAEL BLAKE DeFRANCE
   Defendant

/s/ Michael Donahoe
FEDERAL DEFENDERS OF MONTANA