IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 21–29–M–DLC |
| Plaintiff, | |
| vs. | ORDER |
| MICHAEL BLAKE DEFRANCE, | |
| Defendant. | |

Before the Court are Defendant Michael Blake DeFrance's Motion to Dismiss Second Superseding Indictment (Doc. 69), the United States' Motion in Limine for Pretrial Determination of Admissibility of Certain Evidence (Doc. 34), and the United States' Motion in Limine to Preclude Defenses of Public Authority, Entrapment by Estoppel, and Innocent Intent (Doc. 36). The Court held a hearing on these motions on February 23, 2022. (Doc. 82.) The parties are familiar with the history of this case, which is recounted in the Court's previous order on Mr. DeFrance's motions to dismiss (Doc. 71), and the Court does not repeat it here.

**I.      Motion to Dismiss Second Superseding Indictment (Doc. 69)**

Mr. DeFrance raises four grounds for dismissing the operative indictment. First, he argues that the indictment should be dismissed in its entirety, or alternatively that Counts II, III, and IV should be dismissed, with prejudice as a

1

sanction against the United States for an alleged *Brady* violation in failing to disclose evidence concerning NICS investigations relating to Mr. DeFrance's ATF 4473 forms. (Doc. 69 at 4.) Second, he argues for dismissal of all charges because he was not afforded administrative procedural due process rights to contest his alleged prohibited status. (*Id.* at 5.) Third, he argues that collateral estoppel bars the United States from alleging that he is a prohibited person. (*Id.*) Fourth, he argues that the operative indictment is a vindictive prosecution because it brought additional counts against him after he provided notice of his defenses and without disclosing material he contends is exculpatory. (*Id.*)

### A. *Brady* Violation

A *Brady* claim must satisfy three elements: (1) the government must have suppressed evidence; (2) the evidence is favorable to the defendant; and (3) the suppression caused prejudice. *Brady v. Maryland*, 373 U.S. 83, 87–88 (1963); *see also Skinner v. Switzer*, 562 U.S. 521, 536 (2011). "*Brady* evidence is, by definition, always favorable to the defendant and material to his guilt or punishment." *Skinner*, 526 U.S. at 536. To show prejudice, the defendant must show that "there is a reasonable probability that the result of the [proceeding] would have been different" if the evidence had been disclosed. *Strickler v. Greene*, 527 U.S. 263, 289 (1999).

Mr. DeFrance argues that the materials filed under seal as Doc. 63, which relate to Mr. DeFrance's firearms transactions, were belatedly disclosed in November of 2021 despite the United States possessing those materials since September of 2021. (Doc. 70 at 3–5.) The government argues that Mr. DeFrance could have discovered some of the evidence in question through due diligence, and he suffered no prejudice because the documents were disclosed with enough time to use them. (Doc. 72 at 11–13.)

While it is true that Mr. DeFrance supplied the 4473 forms in the first instance (Doc. 28), some of the documents filed in Doc. 63 concerning the underlying records were uniquely in the government's control. However, they were disclosed when no trial date was set in this case because of several pending motions. Although Mr. DeFrance argues that the materials "would have been woven into" his briefing concerning the motion in limine to exclude his affirmative defenses, he has not demonstrated prejudice on that basis: first, in response to this argument, the Court provided the opportunity for supplemental briefing on the motion in limine (Doc. 76), and second, given that the Court will deny the United States' motion to preclude his affirmative defenses before trial for the reasons discussed below, the possibility of additional arguments against the motion is a moot issue.

Mr. DeFrance argues in his supplemental briefing on the motion in limine

that the government should have corrected its briefing on the motion in limine regarding his defenses once it learned that he was "proceeded" to transact in firearms in at least two of the transactions (Doc. 78 at 4–5), but it is not clear how the government's arguments opposing his defenses—which primarily concern whether Mr. DeFrance established that he had a sufficiently close relationship with a governmental official to reasonably rely on that official's authority, whether he had made an authorized governmental official aware of all relevant facts, and whether jury instructions on the defenses would result in confusion (Doc. 37) — would be affected by the fact that he was proceeded. And in any event, the government's motion will be denied at this stage for the reasons discussed below. He has not demonstrated prejudice on this basis.

Mr. DeFrance further argues that he could have raised an as-applied Second Amendment challenge to the prosecution if the documents had been disclosed (Doc. 78 at 8–9), but he did not file such a motion raising that challenge when the Court granted his motion to file additional pretrial motions and set a new deadline for all further motions after the documents were disclosed (Doc. 64 (dated Nov. 22, 2021)). Moreover, the Ninth Circuit has expressed strong skepticism of such arguments in the context of firearm possession prosecutions. *See United States v. Chovan*, 735 F.3d 1127, 1141–42 (9th Cir. 2013) (observing that Congress did not enact § 922(g)(9) with a limited duration or a good behavior clause, but rather only

excepted individuals whose convictions were expunged, pardoned, or set aside or whose civil rights were restored). Although he argued at the hearing that he would have raised an as-applied vagueness challenge (Doc. 85 at 59–60), the Court considered and rejected as-applied versions of his vagueness arguments in its order denying the third motion to dismiss (Doc. 71 at 32 (recognizing that Mr. DeFrance raised both facial and as-applied challenges), 34–35 (holding that statutes satisfied fair warning requirement "on their faces and on the alleged facts of this case"), 40 (holding that relationship definition did not invite arbitrary enforcement on the alleged facts of this case).) He has not demonstrated prejudice on this basis.

     Mr. DeFrance further argues that he was prejudiced because a plea offer remained open to him while the government possessed the emails but had not disclosed them while urging him to plead guilty, preventing him from pursuing two defense strategies: (1) lobbying the government to include the evidence in the grand jury presentation for the Second Superseding Indictment in accordance with the United States Attorney's Manual, or (2) DeFrance requesting to testify himself before the grand jury if the government refused to include the evidence. (Doc. 74 at 8.) The Court is skeptical that *Brady* prejudice can be shown based on the potential outcome of evidence presented during grand jury proceedings, which in the majority of cases will pre-date any obligation to produce evidence to a yet-to-be-charged defendant. *See Skinner*, 526 U.S. at 536 ("*Brady* evidence is, by

definition, always favorable to the defendant and material to his *guilt or punishment*." (emphasis added)). Even assuming that *Brady* prejudice may be shown by a reasonable probability of a different outcome at the indictment stage, the potential impact of either of Mr. DeFrance's proposed strategies on the grand jury's finding of probable cause has not been explained and appears to be speculative. *See Downs v. Hoyt*, 232 F.3d 1031, 1037 (9th Cir. 2000) (rejecting *Brady* claim where defendant's arguments were "speculative and fail[ed] to point out . . . how production of these materials would have created a reasonable probability of a different result"). Accordingly, Mr. DeFrance has not shown that he was prejudiced by the timing of the disclosure of the documents at issue. Because he has not satisfied this element of a *Brady* claim, the Court need not address whether the materials were suppressed despite their disclosure well before trial or whether the materials are favorable to Mr. DeFrance. *United States v. Olsen*, 704 F.3d 1172, 1181 (9th Cir. 2013).

To the extent Mr. DeFrance raises a Due Process claim concerning the automatic purging of NICS records, the government correctly argues that he cannot demonstrate bad faith in the destruction of evidence because such destruction was required by law. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); 28 C.F.R. § 25.9.

### B. Administrative Due Process

Mr. DeFrance argues that the documents filed as Doc. 63 constitute "a *nunc*

*pro tunc* denial by ATF of Mr. DeFrance's right to possess a firearm" that qualifies him to pursue an administrative appeal, which the government has "leapfrog[ged] . . . in favor of this criminal prosecution." (Doc. 70 at 6–7.) Mr. DeFrance erroneously conflates the NICS check process and the administrative process for correcting NICS records to avoid erroneous denials with a legal determination that a person is or is not prohibited from possessing a firearm. *See* 28 C.F.R. § 25.10 (setting forth processes for verifying or correcting NICS records and appealing erroneous denials).

There is no constitutional or statutory requirement that the government must permit a person to exhaust administrative remedies to determine his prohibited person status before bringing criminal charges for unlawful possession of a firearm or related charges. *See United States v. Seibert*, 403 F. Supp. 2d 904, 921 (S.D. Iowa 2005). Such a requirement would be pointless in cases where a defendant obtains a firearm via means that do not include an NICS check (e.g., theft or purchases from a non-licensed seller), and it would require unrealistic bureaucratic perfection despite potential dishonesty on a Form 4473 or incomplete records where a defendant obtains a firearm through a licensed dealer. To the extent that Mr. DeFrance's acquisition of the firearms created a reliance interest or belief that he was not prohibited, as he argues in his reply brief (Doc. 74 at 11–12), that reliance is an issue of fact concerning his state of mind that is appropriately

resolved at trial, not on a pretrial motion to dismiss.

### C. Collateral Estoppel

For similar reasons, the Court rejects Mr. DeFrance's collateral estoppel argument. Mr. DeFrance argues that the government should not be permitted to argue that he is a prohibited person under 18 U.S.C. § 922(g)(9) when it acknowledges that he ultimately may have been "proceeded" in all of his transactions based on the absence of records that he was denied. (Doc. 70 at 7–10.)

An NICS check provides to a licensed importer, manufacturer, or dealer of firearms "information as to whether the transfer of a firearm . . . would be in violation of Federal or state law." 28 C.F.R. § 25.1. It does not offer a binding determination of a potential purchaser's status as a prohibited or non-prohibited person under 18 U.S.C. § 922, particularly in light of the fact that the implementing regulations make clear that "a limited number of" state and local law enforcement agencies would contribute records to the database on a voluntary basis, 28 C.F.R. § 25.4, and thus recognize that the database is not comprehensive. The purpose of the background check system is to enable *sellers* to "keep guns out of the hands of criminals and others who should not have them," *Abramski v. United States*, 573 U.S. 169, 180 (2014), not to provide confirmation of prohibited or non-prohibited status to *purchasers*. Accordingly, even if Mr. DeFrance was

"proceeded" in all five firearms transactions, those NICS check results do not create a binding position of the government concerning his prohibited or non-prohibited status.

### D. Vindictive Prosecution

Mr. DeFrance argues that the government brought the three additional charges in the Second Superseding Indictment vindictively after he provided notice of his affirmative defenses and opposed the government's motion to preclude those defenses; in particular, he argues that the false statement charges "cast Mr. DeFrance as a prevaricator" to undermine his defenses related to his successful firearms transactions. (Doc. 70 at 10–17.)

It is well-established in the Ninth Circuit that "[a] prosecutor violates due process when he seeks additional charges solely to punish a defendant for exercising a constitutional or statutory right[,]" but at the pretrial stage, vindictiveness is not presumed from the fact that a more severe charge followed or even resulted from the defendant's exercise of a right. *United States v. Gamez-Orduno*, 235 F.3d 453, 462 (9th Cir. 2000). Ninth Circuit precedent and cases from other jurisdictions indicate that vindictive prosecution claims cannot prevail if the defendant's exposure to punishment is not increased. *See United States v. Motley*, 655 F.2d 186, 190–91 (9th Cir. 1981) (rejecting vindictive prosecution argument where new indictment brought different charges that "increase[d] the

9

chance of conviction" but did not increase possible prison term); *United States v. Snell*, 592 F.2d 1083, 1087 (9th Cir. 1979) (focusing severity inquiry on maximum potential punishment); *see also United States v. Santiago-Rodriguez*, 990 F. Supp. 2d 129, 132 & n.5 (D.P.R. 2013) (rejecting vindictive prosecution argument in part because additional count would be grouped and thus did not increase sentencing exposure); *cf. United States v. Thomas*, 410 F.3d 1235, 1247 (10th Cir. 2005) (rejecting vindictive prosecution argument in part because prosecutor sincerely but erroneously believed that additional charge would not increase defendant's punishment). The government is correct that U.S.S.G. § 3D1.2 provides for grouping the counts in the Second Superseding Indictment if Mr. DeFrance is convicted of the possession charge and one or more of the false statement charges, and he thus is not subjected to a more severe punishment under the Second Superseding Indictment. Accordingly, the burden does not shift to the government to demonstrate that any increase in the severity of charges was not motivated by a vindictive motive. *See Snell*, 592 F.3d at 1086–87.

Although Mr. DeFrance argues that the false statement charges were intended to weaken his defense (Doc. 70 at 10–17; Doc. 85 at 12–13), the parties' consent to a bench trial weakens any concerns about unfair prejudice to Mr. DeFrance's defenses to the possession charge stemming from the allegation of falsehoods in the false statement charges.

## II. Motions in Limine

A motion in limine is a "procedural mechanism" through which questions regarding the admissibility of "testimony or evidence in a particular area" may be resolved before trial. *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Such in limine rulings are preliminary, and the Court "may always change [its] mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000). Motions in limine may be superfluous in bench trials, as this case now is (Doc. 90), where "asking the judge to rule in advance on prejudicial evidence" would be "so that the judge would not hear the evidence." *Heller*, 551 F.3d at 1112. However, "pretrial evidentiary motions may be appropriate" in a bench trial for "logistical and other reasons." *Id.* With these standards in mind, the Court will turn its attention to the merits of the underlying motions.

### A. Motion in Limine Concerning Admissibility of Certain Evidence (Doc. 34)

The United States has moved for an in limine ruling on the admissibility of certain evidence: (1) Mr. DeFrance's consent to search his truck on June 27, 2018, which resulted in the observation of three firearms; (2) the execution of a search warrant at Mr. DeFrance's residence on October 2, 2018, which resulted in the seizure of two firearms; and (3) the unavailability of the victim of Mr. DeFrance's PFMA conviction in 2013 to testify about the nature of their relationship in

satisfaction of the relationship element of 18 U.S.C. § 922(g)(9). (Doc. 34 at 2.)

### 1. The Investigation and Searches

The United States argues that the existence of an investigation, consent obtained from Mr. DeFrance for a search of his vehicle, and the execution of a search warrant are inextricably intertwined with the charges in this case. (Doc. 35 at 3–4.) Mr. DeFrance argues that the evidence of the vehicle search and search warrant are unnecessary because he can (and will) stipulate that he possessed firearms because he maintains that he possessed them lawfully. (Doc. 45 at 2; Doc. 85 at 66.)

Under Ninth Circuit case law, "other act" evidence need not meet the requirements of Rule 404(b) if admission is necessary "to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime; it is obviously necessary in certain cases for the government to explain either the circumstances under which particular evidence was obtained or the events surrounding the commission of the crime." *United States v. Loftis*, 843 F.3d 1173, 1178 (9th Cir. 2016) (internal quotation omitted). "This exception to Rule 404(b) is most often invoked in cases in which the defendant is charged with being a felon in possession of a firearm." *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1013 (9th Cir. 1995). For example, in *United States v. Daly*, 974 F.2d 1215, 1216–17 (9th Cir. 1992), the court held that evidence that the defendant engaged in a

shoot-out with police was relevant and necessary to put the defendant's felon-in-possession charge into context and to rebut his claims of self-defense.

However, in those cases, the defendant apparently did not stipulate to possessing the firearms in question. The government here argues that the consent search and search warrant are "necessary to inform the jury of the basis for law enforcement's intrusion into the defendant's property." (Doc. 35 at 4.) But now that the parties have agreed to a bench trial (Doc. 90), and Mr. DeFrance has agreed to stipulate to the fact of his possession of the firearms (Doc. 45 at 2; Doc. 85 at 66), the probative value of this evidence has decreased significantly, making it more difficult for the Court to issue a pretrial ruling balancing the relevance and potential prejudice of this evidence outside the context in which it may be introduced at trial.

On the merits, the evidence concerning the consent search and residence search is inextricably intertwined under the Ninth Circuit precedent described above. However, the existence of the State of Montana's investigation of Mr. DeFrance is more attenuated from the firearms possession offense than the searches, and the government has conceded that evidence of the *nature* of the investigation is not necessary (Doc. 35 at 4). "There must be a sufficient contextual or substantive connection between the proffered evidence and the alleged crime to justify exempting the evidence from the strictures of Rule 404(b)."

*Vizcarra-Martinez*, 66 F.3d at 1013. If the government "would encounter little difficulty in presenting the evidence relevant to its case against the defendant" without introducing the "other acts" evidence, it is not "so inextricably intertwined with the crime as to fall outside the scope of Rule 404(b)." *Id.* The government likely would encounter substantial difficulty if forced to introduce evidence of the searches that revealed the firearms without explaining that those searches occurred within the context of an investigation, and the existence of the investigation thus is inextricably intertwined. On the other hand, the nature of the investigation has *extraordinarily* prejudicial potential, and the parties and witnesses alike may struggle to walk any evidentiary tightrope established by pretrial rulings concerning the investigation. Fortunately, both of these concerns have been alleviated by the parties' agreement to a bench trial; the Court is already familiar with the circumstances of the searches based on the parties' pretrial motions, and it is duty-bound to carefully guard its decisions against prejudicial or irrelevant concerns. Thus, establishing clear guardrails permitting or prohibiting the introduction of this evidence for particular purposes before trial is unnecessary. Accordingly, the Court will reserve ruling on this evidence's admissibility until trial.

### 2. The PFMA Victim's Unavailability

The United States argues that it wishes to introduce evidence of the PFMA

victim's unavailability to prevent the jury from drawing incorrect inferences about missing evidence concerning her. (Doc. 35 at 5–7.) The parties' consent to a bench trial has mooted the government's concerns. (Doc. 90; *see also* Doc. 85 at 67–68 (conceding that jury instruction would moot issue).) Accordingly, the government's motion concerning this evidence will be denied as moot. To the extent either party wishes to introduce evidence of the PFMA victim's unavailability at trial for any other purpose, the Court will rule on the admissibility of that evidence at trial.

### B. Motion in Limine Concerning Mr. DeFrance's Defenses (Doc. 36)

The United States has moved for an in limine ruling precluding DeFrance from relying on the defenses of public authority, entrapment by estoppel, and innocent intent. (Doc. 36.) In response to the government's motion, DeFrance argues that irrespective of what the defense is called, he is entitled to introduce evidence that he was cleared to transact in firearms on several occasions because the government must prove that he knew his status as a prohibited person. (Doc. 45 at 4–5.)

The Court will deny this motion because the Court's ultimate decision whether to consider the applicability of any of these defenses will hinge on what evidence is actually presented and relied upon at trial. *United States v. Bear*, 439 F.3d 565, 568 (9th Cir. 2006). The parties' consent to a bench trial moots the

15

government's concerns about jury confusion based on these defenses. (Doc. 37 at 5–6.) Mr. DeFrance is correct that the government bears the burden of proving all elements of the offense beyond a reasonable doubt, including his *mens rea*. Although the government has asserted that evidence of the NICS determinations is not admissible (Doc. 85 at 41), the Court will be best positioned to rule on its admissibility within the context in which that evidence is presented at trial and will consider any objections at that time.

## Conclusion

IT IS ORDERED that Mr. DeFrance's Motion to Dismiss the Second Superseding Indictment (Doc. 69) is DENIED.

IT IS FURTHER ORDERED that the United States' Motion in Limine for Pretrial Determination of Admissibility of Certain Evidence (Doc. 34) is DENIED AS MOOT as to the PFMA victim's unavailability, and the Court will RESERVE RULING as to the evidence relating to the underlying investigation and searches.

IT IS FURTHER ORDERED that the United States' Motion in Limine to Preclude Defenses of Public Authority, Entrapment by Estoppel, and Innocent Intent (Doc. 36) is DENIED.

IT IS FURTHER ORDERED that the trial in this matter is RESET for June 6, 2022 in the Russell Smith Federal Courthouse in Missoula, Montana. The plea agreement deadline is May 26, 2022. The trial briefs deadline is May 31, 2022.

The Court's previous Scheduling Order (Doc. 18) otherwise remains in full force and effect.

DATED this 15th day of April, 2022.

_____
Dana L. Christensen, District Judge
United States District Court