**JENNIFER S. CLARK**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**P.O. Box 8329**
**Missoula, MT 59807**
**Phone: (406) 542-8851**
**FAX: (406) 542-1476**
**Email: jennifer.clark2@usdoj.gov**

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 21-29-M-DLC** |
| **Plaintiff,** | **GOVERNMENT'S TRIAL BRIEF FOR AUGUST 15, 2022 TRIAL** |
| **vs.** | |
| **MICHAEL BLAKE DEFRANCE,** | |
| **Defendant.** | |

The United States of America, through its counsel, Jennifer S. Clark,

Assistant United States Attorney for the District of Montana, submits this trial brief

pursuant to the Court's scheduling order.  *See* Docs. 18 and 91.

## THE INDICTMENT AND ELEMENTS OF THE OFFENSES CHARGED

The second superseding indictment provides as follows:

## COUNT I

That on or about and between October 3, 2016, and October 2, 2018, at Missoula, in Missoula County, in the State and District of Montana, the defendant, MICHAEL BLAKE DEFRANCE, knowing he had been convicted on or about May 6, 2013, of a misdemeanor crime of domestic violence under the laws of the State of Montana, which meets the definition of a misdemeanor crime of domestic violence under 18 U.S.C. § 921(a)(33)(A)(i), knowingly possessed, in and affecting interstate commerce, firearms and ammunition, in violation of 18 U.S.C. § 922(g)(9).

## COUNT II

That on or about February 24, 2018, at Missoula and within Missoula County, in the State and District of Montana, the defendant, MICHAEL BLAKE DEFRANCE, in connection with his acquisition and attempted acquisition of a firearm, namely a Stevens Arms 200 rifle from Cash 1 Pawn, Inc., Missoula, Montana, a licensed dealer, knowingly made a false and fictitious written statement to Cash 1 Pawn, Inc., which statement was intended and likely to deceive Cash 1 Pawn, Inc., as to a fact material to the lawfulness of such sale and acquisition of the said firearm to the defendant under Chapter 44 of Title 18, in that the defendant represented at item 11(i) on ATF Form 4473, Firearms Transaction Form, dated

February 24, 2018, the defendant had not been convicted in any court of a misdemeanor crime of domestic violence, all in violation of 18 U.S.C. § 922(a)(6).

## COUNT III

That on or about March 2, 2018, at Missoula and within Missoula County, in the State and District of Montana, the defendant, MICHAEL BLAKE DEFRANCE, in connection with his acquisition and attempted acquisition of a firearm, namely a Smith & Wesson 60 Lady Smith revolver, from Cash 1 Pawn, Inc., Missoula, Montana, a licensed dealer, knowingly made a false and fictitious written statement to Cash 1 Pawn, Inc., which statement was intended and likely to deceive Cash 1 Pawn, Inc., as to a fact material to the lawfulness of such sale and acquisition of the said firearm to the defendant under Chapter 44 of Title 18, in that the defendant represented at item 11(i) on ATF Form 4473, Firearms Transaction Form, dated February 24, 2018, the defendant had not been convicted in any court of a misdemeanor crime of domestic violence, all in violation of 18 U.S.C. § 922(a)(6).

## COUNT IV

That on or about August 25, 2018, at Missoula and within Missoula County, in the State and District of Montana, the defendant, MICHAEL BLAKE DEFRANCE, in connection with his acquisition and attempted acquisition of a firearm, namely a Remington 770 rifle, from Cash 1 Pawn, Inc., Missoula,

Montana, a licensed dealer, knowingly made a false and fictitious written statement to Cash 1 Pawn, Inc., which statement was intended and likely to deceive Cash 1 Pawn, Inc., as to a fact material to the lawfulness of such sale and acquisition of the said firearm to the defendant under Chapter 44 of Title 18, in that the defendant represented at item 11(i) on ATF Form 4473, Firearms Transaction Form, dated February 24, 2018, the defendant had not been convicted in any court of a misdemeanor crime of domestic violence, all in violation of 18 U.S.C. § 922(a)(6).

## ELEMENTS

The elements for count I of the second superseding indictment, prohibited person in possession of firearms and ammunition, are:

- First, the defendant knowingly possessed at least one firearm or ammunition;

- Second, the firearms or ammunition had been transported from one state to another or between a foreign nation and the United States;

- Third, at the time the defendant possessed the firearms or ammunition, the defendant had previously been convicted of a misdemeanor crime of domestic violence; and

- Fourth, at the time the defendant possessed the firearms or ammunition, the defendant knew that he had been convicted of such an offense.

The elements for counts II-IV of the second superseding indictment, false statement in acquisition of a firearm, are:

- First, Cash 1 Pawn, Inc. was a licensed firearm dealer;

- Second, in connection with acquiring a firearm from Cash 1 Pawn, Inc., the defendant made a false statement;

- Third, the defendant knew the statement was false; and

- Fourth, the false statement was material; that is, the false statement had a natural tendency to influence, or was capable of influencing Cash 1 Pawn, Inc., into believing the firearm could be lawfully sold to the defendant.

*See* Ninth Circuit Criminal Model Jury Instruction 14.15 Firearms – Unlawful Possession (18 U.S.C. § 922(g) (March 2022)); *see also* Comment to Instruction 14.13 Firearms-Unlawful Receipt (18 U.S.C. § 922(g) (March 2022)); Ninth Circuit Criminal Model Jury Instruction 14.8 Firearms—False Statement in Acquisition (18 U.S.C. § 922(a)(6) (March 2022)).

## ANTICIPATED PROOF

On June 27, 2018, Detective Guy Baker located a Smith and Wesson .357 caliber revolver and a box of .357 ammunition in the middle console of Michael DeFrance's truck. Two .22 caliber rifles were located under the back seat.

On October 2, 2018, a search warrant was executed at DeFrance's residence at 1035 Grizzly Mountain Road, Missoula. Detective Guy Baker located a Smith and Wesson Lady Smith .357 revolver, SN DAW6108 on a desk by the front door. Detective Baker recognized this as the revolver he had in his truck in June. DeFrance also had a Remington Model 770 .243, SN M71863512, in his bedroom with four .243 rounds. There was a .22 caliber Keystone Arms rifle, SN 208343, hanging on a wooden support beam near DeFrance's dresser.

DeFrance was sentenced for partner and family member assault on Jane Doe, under Mont. Code Ann. § 45-5-206, in Sanders County on May 6, 2013. Justice of the Peace Donald Strine presided over DeFrance's change of plea hearing and imposed sentence. DeFrance signed a waiver of rights form on May 6, 2013. He acknowledged his rights on a form, which includes – on a list of possible consequences of pleading guilty – the loss of firearms rights. The same form contains space for the defendant to explain the basis for his guilty plea, and DeFrance's form reads as follows: "On 4-14-2013, in Sanders County I caused bodily injury to my girlfriend."

Judge Strine was interviewed by Detective Baker. Judge Strine did not specifically recall DeFrance's change of plea hearing. He reviewed the file and stated he reviewed the plea agreement with the defendant because he had made a check mark next to each point as he reviewed it with DeFrance. Judge Strine

stated he wrote the narratives on the document. As a matter of routine, Judge Strine would ask the defendant to tell him what he did. In this case, DeFrance stated that he caused bodily injury to his girlfriend. Judge Strine stated that when he reviewed plea agreements involving PFMA, he always made sure defendants understood they would lose their firearm rights. Judge Strine wrote in this case "loss of firearms rights" on the line regarding possible consequences of a guilty plea. Judge Strine always made an effort to make that point clear because "firearms are a big deal up in these parts." Judge Strine clarified "Montana and specifically in Sanders County."

DeFrance completed five ATF form 4473 at Cash 1 Pawn in Missoula, Montana between 2015 and 2018. On all forms, DeFrance represented that he had not been convicted of a misdemeanor crime of domestic violence.

Doe and DeFrance met in 2009 or 2010 when the DeFrance family moved across the street from Doe's great grandparents. Prior to and after the PFMA in 2013, Doe often stayed with DeFrance in a camper on the DeFrance property. Doe kept personal items such as clothing, art supplies and pets at the camper. Doe had unfettered access to the trailer. Doe stayed in the camper when DeFrance was fighting fires. Doe and DeFrance were in an intimate relationship. Around 2010, Doe was pregnant with DeFrance's child. Doe was pregnant in late 2013. Their first child was born in July 2014 and their second child was born October 2015.

## WITNESSES

1. Honorable Donald Strine; Presided over PFMA conviction

2. Joel Christensen; Cash One Pawn

3. Danielle Matt; Doe's aunt

4. Vicki Velarde; Doe's grandmother

5. Valenda Morigeau; Doe's aunt

6. Nathan Morigeau; Doe's brother

7. ATF SA Thomas Hess; Interstate Nexus

8.  FBI TFO Guy Baker; Lead investigator

## EXHIBITS

1. Notice to Appear and Complaint, Sanders County Ticket C35A 35425, dated April 14, 2013, issued to Michael Blake DeFrance (Exhibit 1);

2. Initial Appearance/Arraignment in Sanders County Justice Court case number TK-2013-342, *State of Montana v. Michael Blake DeFrance* (Exhibit 2);

3. Order and Conditions of Release Acknowledgment for Michael Blake DeFrance in Sanders County Justice Court case number TK-2013-342 (Exhibit 3);

4. Plea Agreement in Sanders County Justice Court case number TK-2013-342, *State of Montana v. Michael Blake DeFrance* (Exhibit 4);

5. Waiver of rights and entry of guilty plea for Michael Blake DeFrance, dated May 6, 2013 (Exhibit 5);

6. ATF Form 4473 dated February 4, 2015, at Cash 1 Pawn, Missoula for Michael Blake DeFrance (Exhibit 6);

7.  ATF Form 4473 dated September 22, 2016, at Cash 1 Pawn, Missoula for Michael Blake DeFrance (Exhibit 7);

8.  ATF Form 4473 dated February 24, 2018, at Cash 1 Pawn, Missoula for Michael Blake DeFrance (Exhibit 8);

9.  ATF Form 4473 dated March 2, 2018, at Cash 1 Pawn, Missoula for Michael Blake DeFrance (Exhibit 9);

10. ATF Form 4473 dated August 25, 2018, at Cash 1 Pawn, Missoula for Michael Blake DeFrance (Exhibit 10);

11. Photos of Smith & Wesson Lady Smith, SN DAW6108 (Exhibits 11-13);

12. Photos of Remington 770 rifle, SN M71863512 (Exhibits 14-15);

13. Photos of Keystone Arms .22 rifle, SN 208343 (Exhibits 16-17);

## LEGAL ISSUES

**I.**   ***Missouri v. Frye*, 132 S. Ct. 1399 (2012).**

Although the defendant is proceeding to trial, the United States notes for the record that a motion for change of plea would have been more beneficial to the defendant than a conviction following trial.   *See Missouri v. Frye*, 132 S. Ct. 1399 (2012).   A written plea agreement was presented to the defendant for his consideration.   That plea agreement represented, in the government's view, the most favorable offer extended to the defendant.

The Government does not seek to involve the Court in the plea agreement process in violation of Rule 11, but respectfully requests the Court make an inquiry to ensure the record is protected.

## II. Elements

Count I requires the government to prove that the defendant has been convicted of a misdemeanor crime of domestic violence. A misdemeanor crime of domestic violence is defined under 18 U.S.C. §921(a)(33) as:

(1) a misdemeanor under Federal, State, or Tribal law;

(2) that has, as an element, the use or attempted us of physical force, or the threatened use of a deadly weapon;

(3) committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

18 U.S.C. §921(a)(33)(A)(i) and (ii).

### A. Force

The first element that the government must prove is that the predicate offense was a misdemeanor with an element of force. 18 U.S.C. § 921(a)(33)(A)(i). In cases where a defendant pleads guilty, courts can rely on the statement of factual basis for the charge shown by a transcript of plea colloquy or by written plea agreement presented to the court, or by a record of comparable findings of fact adopted by the defendant upon entering the plea to determine the elements of the underlying offense. *Shepard v. United States*, 544 U.S. 13 (2005). In this case, the Court can rely on DeFrance's waiver of rights and his acknowledgment that he caused his girlfriend bodily injury to conclude he

was convicted under 45-5-206(a) of the Montana Code for a misdemeanor partner assault, which is a qualifying offense.

## B.   Relationship

The United States will show that the relationship between DeFrance and Jane Doe – at the time of the assault – qualifies as "similarly situated to a spouse."

In 1996, Senator Lautenberg introduced an amendment to 18 U.S.C. § 922(g) to prohibit individuals convicted of misdemeanor crimes of domestic violence from possessing firearms.   142 Cong Rec. S2646-02.   The reason for the amendment was to "keep guns out of the hands of people who have proven themselves to be violent and a threat to those closest to them."   Senator Lautenberg stated the intent was to include "violent crimes committed by a spouse, former spouse, paramour, parent, guardian, or similar individual."   Senator Lautenberg recognized that domestic violence acts are dangerous by nature and involve people who have a history together, and perhaps share a home or a child.

Several courts have analyzed the meaning of "similarly situated to a spouse."   The syntax of the statute suggests that Congress used the phrase to cover domestic arrangements that are not necessarily based on sexual or family relationships.   *United States v. Heckenliable*, 2005 WL 856389, *4 (D. Utah Central Division 2005).   The *Heckenliable* court examined factors that could be

used to determine if two people were "cohabiting as spouses." *Id*. at *3. Those included:

> "the length of the relationship, shared residence as indicated by spending the night and keeping one's belongings at the residence, intimate relations, expectation of fidelity and monogamy, shared household duties, regularly sharing meals together, joint assumption of child care, providing financial support, moving as a family unit, joint recreation and socialization, and recognition of the live-in relationship by family and friends."

*Id*. at *3. These same factors can be used to determine if someone is similarly situated as a spouse if there is no cohabitation to determine the domestic nature of the relationship.

"In dropping the word 'cohabiting' from the final clause, Congress apparently intended to sweep into the statute relationships that did not involve cohabitation." *Id*. "Congress was no doubt concerned that some persons, while not habiting, might nonetheless remain in such frequent contact with each other that a risk of deadly violence would exist if firearms were present." *Id.* The *Heckenliable* court determined that the statute's plain language supported that the phrase "similarly situated to a spouse" was expansive. *Id*. at *4. It also looked to Senator Lautenberg's legislative comments that "anyone who attempts or threatens violence against a loved one has demonstrated that he or she poses an unacceptable risk and should be prohibited from possessing firearms." *Id*.

The Eighth Circuit declined to disturb a jury's finding that the defendant's conviction for assaulting his secretary qualified as a misdemeanor conviction of domestic violence under 18 U.S.C. § 921(a)(33)(A)(ii). *United States v. Cuervo*, 354 F.3d 969, 998 (8th Cir. 2004) (*vacated on other grounds sub nom.*, *Norman v. United States*, 543 U.S. 1099, 125 S. Ct. 1049, 160 L. Ed. 2d 994 (2005), *Schoenauer v. United States*, 543 U.S. 1099, 125 S. Ct. 1050, 160 L. Ed. 2d 994 (2005).

In *Cuervo*, Schoenauer (a consolidated defendant on appeal) engaged in a long-term extramarital affair with his secretary. *Cuervo*, 345 F.3d at 997. He occasionally stayed with her at an apartment he kept. *Id.* Schoenauer remained married to and lived with his wife. *Id.* Schoenauer asserted that the statute was vague as it applied to him. *Id.* He argued at trial that because he was married to someone else and lived with her, he did not fit the definition of similarly situated to a spouse of the victim. *Id.* at 998. While the victim was not his spouse, the evidence showed that they shared an intimate personal relationship. *Id.* The Eighth Circuit disagreed with his vagueness argument, stating that "a common read of the statute would alert a person of ordinary intelligence that the phrase 'similarly situated to a spouse' is meant to include assaults perpetrated against those who are not spouses, yet share their defining characteristics." *Id.* The jury was free to determine as a factual matter that the relationship qualified. *Id.*

While living together is one factor a court may consider when determining if the parties were similarly situated as a spouse, it is not a requirement. *Eibler v. Department of treasury, Bureau of Alcohol, Tobacco and Firearms*, 311 F.Supp.2d 618, 622 (N.D. Ohio Eastern Div. 2004). Eibler filed action arguing that his denial to purchase a firearm was improper. *Id*. at 618. He had been convicted of misdemeanor assault on his girlfriend of six years. *Id*. at 619; 622. He argued that his relationship to the victim was not domestic in nature under 922(a)(33)(A)(ii) because it didn't "fall into one of the following three categories: (1) a spouse, parent or guardian; (2) a person with whom he shares a child in common; or (3) a person with whom he has or is cohabiting with as a spouse, parent, or guardian." *Id*. at 622. The Court first noted that his analysis ignored the fourth category of persons "similarly situated to a spouse, parent or guardian." *Id.* The Court looked to other cases that found a "close [and] personal," relationship and being a "long-time paramour" to have qualified. *Eibler*, citing *White v. Department of Justice*, 328 F.3d 1361, 1363,64 (Fed. Cir. 2003). The Court found that because the underlying assault was against a person Eibler had a domestic relationship with the denial of a firearm purchase was appropriate and granted summary judgment. *Id.* at 623. Further, the court found it persuasive in *White* that even though they two had separate residences and were no longer living together, they did "maintain an intermittent relationship." *Id*. at 622. Relying on

*White* and *Cuervo*, the fact that Eibler and his victim were not living together at the time of the assault was not dispositive. *Id*.

Certain details tend to show that a relationship is similar to a spousal relationship, including "expectations of fidelity and monogamy, social activities and discussions about having children." *United States v. Cary*, 2008 WL 879433 (N.D. Ga. 2008); *United States v. Barnes*, 295 F.3d 1354, 1366 (DC Cir. 2002)("[w]e would be hard pressed to find an individual of common, or even not so common, intelligence who could not determine whether he was in one of the enumerated relationships when he committed a misdemeanor crime including an element of physical force.")

In *White*, the Federal Circuit analyzed the entire relationship between the parties to determine their arrangement was similar to a spouse. The court relied on evidence that they lived together from August 1998 to June 1999 and then maintained an intermittent relationship until the February 2000 domestic assault. During that period, White stayed "up to five days/nights a week with her" for several months but maintained a separate residence. The nature of the relationship was similar to a spouse because it included expectations of fidelity and monogamy, shared expenses, shared household responsibilities, social activities in common, and discussions about having children.

The facts in this case that support the finding that Doe and DeFrance were similarly situated to spouses are:

1. Intimate relationship beginning in 2009/2010;

2. Doe frequently spending the night/weekends with DeFrance;

3. Doe's possessions kept in his camper;

4. Doe's unfettered access to the camper;

5. Doe's pets in the camper;

6. Expectations of monogamy and fidelity;

7. Starting a family shortly after incident;

8. Doe living with DeFrance shortly after incident;

9. Joint recreation and social activities;

10. Regular meals together.

**C.    Knowledge**

"To convict someone under § 922(g)(9), the government must prove the defendant knew he possessed a firearm, and the defendant knew he belonged to the relevant category of persons barred from possessing a firearm.    *United States v. DeFrance,* 2021 WL 6197188, at *3; citing *Rehaif v. United States*, 139 S. Ct 2191, 2200 (2019).    The United States need not prove that DeFrance "knew his…status prohibited firearm ownership or possession."    *Id*. (citing *United States v. Singh*, 979 F.3d 697, 727-728 (9th Cir. 2020)).

"'Everyone knows' the possession of firearms is a highly regulated activity and that 'an individual's domestic violence conviction should itself put that person on notice that subsequent possession of a gun might well be subject to regulation.'" *United States v. Pfeifer*, 371 F.3d 430, 437 (8th Cir. 2004) (finding the statute provided fair warning a similar relevant misdemeanor could serve as a predicate offense).

The facts that show knowledge in the instant case will come from former Justice of the Peace Donald Strine.   He will testify that DeFrance appeared before him for a charge entitled "partner or family member assault."   DeFrance admitted guilt to "partner or family member assault" by stating he caused bodily injury to his girlfriend.   Judge Strine informed DeFrance that his conviction would impact his right to possess firearms.

## III.   Anticipated challenges to evidence

The government will seek to introduce the content of text messages from DeFrance to Doe while she was in New Mexico.   The purpose of introducing the content is not to establish that Doe was pregnant with DeFrance's child or to establish paternity.   The messages from DeFrance referred to "our baby" indicating that, regardless of who the father might have been, DeFrance had reason to believe it was his child because they had engaged in sexual relations.   Doe had locked herself in the bathroom and was making comments that caused her aunt

concern for her welfare. She was visibly upset by the discussion, which led her aunt to review the messages.

## A. Admissibility

Doe's aunt will testify about things to which she has personal knowledge. Fed. R. Evid. 602. She will testify to her observations of Doe and to her observations of the text messages. She will explain circumstances that led her to believe the messages were from DeFrance, including the name on the phone with whom Doe was communicating.

The Court determines the admissibility of evidence. Fed. R. Evid. 104(a). Inadmissible evidence may be used to determine authenticity of other evidence. The court must decide any preliminary question about whether evidence is admissible and in doing so the court is not bound by evidence rules, except those on privilege. Fed. R. Evid. 194(a).

The admitting party must show by a preponderance that the evidence is admissible. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987). Should DeFrance object to testimony about the messages based on questions surrounding whether he sent them, his argument goes to weight rather than admissibility. *Id.* at 181 (in determining admissibility, "the judge should receive the evidence and give it such weight as his judgment and experience counsel").

"To satisfy the requirement of authentication or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."    Fed. R. Evid. 901(a). Authentication may be based on circumstantial evidence including distinctive characteristics, appearance, substance, taken together will all the circumstances. Fed. R. Evid. 901(b)(5).

Lastly, the best evidence rule does not apply.    An original is not required if all the originals are lost or destroyed, and not by the proponent acting in bad faith. Fed. R. Evid. 1004(a).

This evidence goes directly to establishing the nature of the relationship between Doe and DeFrance, which this Court has determined is the central issue in this case.    (Doc. 71 at 27).    The comments made in the text messages will be supported by evidence from another witness who heard DeFrance make the same comments to Doe.    This Court should admit the evidence and give it the proper weight based on the totality of evidence.

## B.    Hearsay

Hearsay is defined as an out-of-court statement intend to prove the truth of the matter asserted in the statement.    Fed. R. Evid. 801(c).    There are exceptions to the general rule that hearsay is inadmissible, including when the statements are made by a party opponent.    Fed. R. Evid. 801(d)(2)(A); *United States v.*

*Workinger*, 90 F.3d 1409, 1415 (9th Cir. 1996) (noting the defendant's "statements in the transcript were admissions of a party-opponent"). A statement made by the defendant in documents is also admissible under Rule 801(d)(2)(A). *See, e.g., United States v. Pang*, 362 F.3d 1187, 1193 (9th Cir.) ("When offered against Pang, Pang's invoices were admissions, and therefore non-hearsay as defined by Rule 801(d)(2)."), *cert. denied*, 125 S. Ct. 372 (2004); *United States v. Johnson*, 28 F.3d 1487, 1498-99 (8th Cir.) (Western Union money transfers portions completed by defendants properly admitted), *cert. denied*, 513 U.S. 1098 (1995).

The messages the government intends to introduce here do not constitute hearsay because they are DeFrance's statements. But even if the Court disagrees, they should be admitted since they are not being introduced to show the truth of the matter asserted, but to illuminate the relationship between DeFrance and Jane Doe. The messages indicate DeFrance and Doe had engaged in an intimate relationship prior to the 2013 assault and show the nature of the relationship prior to and during 2013. As the cases cited above explain, the depth of the relationship can be proven by evidence of the couple's intimate relations, an expectation of fidelity and monogamy, and discussions about having children. Finally, the government intends to ask Doe's aunt also to talk about Doe's reaction to DeFrance's messages. Her reactions are admissible as present sense impressions, excited utterances, and then-existing mental and emotional condition, which are all

additional exceptions to the hearsay rule regardless of whether the declarant is available as a witness.    Fed. R. Evid. 803(1), (2), and (3).

What are inadmissible, however, based on well-established case law, are statements of the defendant that *he* elects to elicit through statements (exculpatory or otherwise) through other witnesses or documents.    The defendant of course may testify at trial about these matters, should he elect to do so, though he cannot be compelled to testify at trial under the Fifth Amendment.    Under the Federal Rules of Evidence, a defendant's statement is admissible only if offered against him; a defendant may not elicit his own prior statements.    Fed. R. Evid. 801(d)(2)(A).

## III.    Outstanding motions.

DeFrance filed a motion for leave to file a motion to reconsider the Court's denial of his motion to dismiss the second superseding indictment.    The Court denied any further pre-trial briefing, but reserved ruling on the legal issues until after trial.    Doc. 111.

///

///

///

///

///

## ANTICIPATED TRIAL TIME

The United States anticipates that the trial time in this case will be one day.

DATED this 9th day of August, 2022.

JESSE A. LASLOVICH
United States Attorney

*/s/ Jennifer S. Clark*
JENNIFER S. CLARK
Assistant U.S. Attorney